Pennwalt, Stokes Division, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Krikor Mahserejian, Respondents.

Krikor Mahserejian, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Pennwalt, Stokes Division, Respondents.

Argued April 5, 1979, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Lowell A. Reed, Jr.,* with him *Peter J. Weber,* and *Rawle & Henderson,* for Pennwalt, Stokes Division.

*Marc S. Jacobs,* with him *Galfand, Berger, Senesky, Lurie and March,* for Krikor Mahserejian.

OPINION BY JUDGE MENCER, July 6, 1979:

Pennwalt, Stokes Division (employer) has appealed from an order of the Workmen's Compensation Appeal Board (Board) dismissing a petition to terminate or modify compensation payable to Krikor Mahserejian (claimant). We affirm.

On September 4, 1974, claimant suffered a compensable injury to his back which was diagnosed as acute lumbar strain with a herniated disc. The employer voluntarily began making workmen's compensation payments for total disability on September 27, 1974, pursuant to a "notice of compensation payable." On February 11, 1975, surgery was performed to remove the herniated disc. Claimant's physician, Dr. Marvin Kallish, regarded claimant's recovery as good. However, claimant continued to complain about pain in his lower back and legs. Dr. Kallish could discover no anatomical or objective reasons for the pain which claimant reported.

In September 1975, claimant was admitted to the hospital for one week for evaluation by Dr. Jon C.

Sarnecki, an orthopedic surgeon. Like Dr. Kallish, Dr. Sarnecki was unable to discover any objective basis for the pain claimant was reporting. Dr. Sarnecki advised claimant to return to his former job on a part-time basis and to gradually work into a full 40-hour work week. Dr. Sarnecki did not place any other restrictions on the type of work claimant was permitted to do.

In late October 1975, Dr. Kallish similarly advised claimant to return to work on a part-time basis but to avoid heavy lifting. The employer made available to the claimant a modified version of claimant's original position as an "assembler" of equipment which would involve no heavy lifting. Claimant reported to begin work in this position, but he left after three hours and did not return thereafter.[1]

On November 10, 1975, the employer filed a petition for termination or modification of the compensation being paid to claimant. In support of the petition, the employer presented the testimony of the employer's chief of the personnel department, Mr James J. Hughes. Mr. Hughes testified that three jobs were presently available to claimant: (1) his old job as an assembler, (2) the modified assembler job which involved no heavy lifting, and (3) a job as "tool crib attendant." The latter position involved sitting behind a desk and dispensing tools, weighing 4 pounds or less, to other workers. Some bending or stooping would be required to reach tools stored on low levels or to sweep the floor, and use of a ladder would occasionally be necessary to reach higher items.

The employer also presented the testimony of Dr. Kallish and Dr. Sarnecki. Both doctors opined that

---

[1] There is no evidence in the record concerning what, if anything, claimant attempted to do during this 3-hour period or his reasons for leaving.

claimant would be capable of doing any of the three jobs described on a part-time basis. The employer, on two separate occasions, called claimant to testify "as of cross-examination." Claimant testified that he could not perform the job of tool crib attendant because of the bending, stooping and reaching involved. Claimant further stated that "[b]ending to the floor and working, it hurts my back," and he complained of "severe pain that hinders me from doing any of the work I did before."

Finally, the employer introduced into evidence a motion picture taken by a private investigator. The 40-minute film shows the claimant sitting on a tire and working on the front wheel area of an automobile, apparently working on or around the brakes. In the course of his work on the car, claimant occasionally bends his back and also bends from the waist. He also stands up, walks to the front of the car, and bends over the engine.

Claimant introduced no evidence on his own behalf except a letter from Donald M. Qualls, M.D., dated December 13, 1975. In the letter, Dr. Qualls states that, in his opinion, "claimant is incapable of working at this time."

The referee found as a fact that the employer had failed to establish that claimant was capable of doing any of the three jobs described and therefore dismissed the employer's petition. The referee also ordered the employer to pay the claimant's attorney fees. The Board affirmed the dismissal of the petition but reversed the award of attorney fees, and both parties then filed appeals with this Court.

In proceedings to modify compensation payable to a claimant, it is incumbent upon the employer to persuade the factfinder that work which the claimant is capable of performing is available to him. *See, e.g.,*

*Workmen's Compensation Appeal Board v. Pennsylvania School Boards Association,* 28 Pa. Commonwealth Ct. 618, 620, 369 A.2d 503, 505 (1977). While there does not appear to be any dispute that the three jobs described by Mr. Hughes were in fact available to the claimant, the referee was not persuaded by the medical testimony that claimant was capable of performing any of the jobs. Bearing in mind that matters of credibility and the weight of the evidence are for the referee to resolve and that he is not ordinarily bound to accept as true even uncontradicted testimony, we may not disturb his finding that claimant was incapable of performing the jobs, unless there has been a "capricious disregard of competent evidence." *Pomeroy's Inc. v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 270, 325 A.2d 349 (1974); *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A.2d 51, 53 (1942). In other words, the factfinder is not bound to accept as true *any* evidence unless that evidence is such that one of ordinary intelligence could not possibly challenge or entertain the slightest doubts as to its truth. *See, e.g., Gateway Coal Co. v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 608, 613-14, 388 A.2d 1122, 1125 (1978); *Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 542-43, 297 A.2d 520, 522 (1972).

The precise issue before us, then, is whether the medical testimony that claimant was capable of returning to part-time work was such as could not possibly be challenged or doubted. We do not believe the evidence was of such a quality. Claimant has consistently reported severe, disabling pain in his back and radiating down his legs. Neither Dr. Kallish nor Dr. Sarnecki denied the existence of the pain or alleged that claimant was prevaricating; they were simply unable to find any anatomical reason for the pain.

This in itself is not sufficient to compel a conclusion that claimant's disability has decreased. *Workmen's Compensation Appeal Board v. F. W. Woolworth Co.,* 19 Pa. Commonwealth Ct. 413, 338 A.2d 784 (1975); *Pomeroy's Inc. v. Workmen's Compensation Appeal Board, supra.*[2] Moreover, Dr. Kallish admitted that continuing pain after removal of a herniated disc is possible, and Dr. Sarnecki stated that claimant's x-rays revealed some "degenerative changes" in the area of the removed disc which could be "associated with" the pain. Finally, Dr. Qualls' opinion as expressed in his letter of December 13, 1975, that claimant was incapable of working, is in direct conflict with the opinions of the other two doctors.

The film of claimant working on his car, upon which the employer heavily relies, does indeed cast doubt on claimant's contention that the continuing pain would prevent him from doing the apparently minor bending, stooping, and reaching involved in the tool-crib-attendant job. However, the film depicts no exceptionally strenuous work, and it covers only a very brief period of time. It certainly does not conclusively establish that claimant was capable of doing similar work for several hours at a time. In addition, the film is the *only* damaging evidence obtained dur-

---

[2] Dr. Kallish and Dr. Sarnecki thought that claimant's disability might be due to an "anxiety reaction" or a "psychological overlay." The employer contends there is no evidence to show that these "conditions" are related to the original injury. This is true, but the claimant had no duty to introduce such evidence. Rather, it was the employer's burden to establish that claimant's disability was *not* related to the original injury. *See, e.g., McGee v. L. F. Grammes & Sons,* 477 Pa. 143, 383 A.2d 864 (1978); *Workmen's Compensation Appeal Board v. F. W. Woolworth Co., supra.* Since the evidence does not establish whether or not the "anxiety reaction" or "psychological overlay" is related to the injury, or even whether those conditions exist, it is apparent that the employer has not met its burden. *See McGee, supra; F. W. Woolworth Co., supra.*

ing the surreptitious surveillance of the claimant over a *6-month* period.[3] Finally, the referee had the opportunity to observe the claimant on the witness stand and during the several hearings held on the matter and to assess the significance of the film in light of his personal observations. Needless to say, this Court has not had that opportunity.[4]

This is admittedly a close case, and the referee's finding does indeed come close to constituting an improper disregard of evidence. *Cf. Philco Ford Corp. v. Engel*, 21 Pa. Commonwealth Ct. 345, 345 A.2d 790 (1975) (where only testimony is that work within claimant's capabilities as described by doctor has been offered, claimant has obligation to at least try the job). We would frankly have felt more comfortable in affirming a finding that claimant was capable of performing at least the tool-crib-attendant job. Nevertheless, for the reasons set forth above, we cannot hold that the referee was obliged to accept as true the employer's medical evidence, even though that evidence was largely uncontradicted. We must therefore affirm the dismissal of the employer's petition.

---

[3] On the questionable value of such films in general, *see John B. Kelly Co. v. Workmen's Compensation Appeal Board*, 8 Pa. Commonwealth Ct. 589, 303 A.2d 255 (1973), and *DeBattiste v. Anthony Laudadio & Son*, 167 Pa. Superior Ct. 38, 74 A.2d 784 (1950).

[4] Before the film was introduced into evidence, claimant appeared to testify that he had not worked on his car, since the injury in September 1974. The employer contends that the film conclusively shows that claimant was falsifying about this and that his entire testimony was perjured. However, claimant speaks little or no English, and his testimony was taken through an interpreter. The brief testimony in question is ambiguous as transcribed, and we are not certain whether claimant completely understood the question being asked. In addition, claimant may have forgotten the one time when he did work briefly on the car. Finally, even assuming claimant was consciously misrepresenting the truth about his work on the car, it does not necessarily follow that his entire testimony is untrue.

We think it evident from our summary of the evidence, particularly the testimony of Dr. Kallish and Dr. Sarnecki, that the employer had a reasonable basis upon which to seek to modify the compensation payable to claimant, and we will therefore affirm the Board's order reversing the referee's award of attorney fees pursuant to Section 440 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. §996.

### ORDER

AND Now, this 6th day of July, 1979, the order of the Workmen's Compensation Appeal Board, dated June 22, 1978, affirming in part and reversing in part the order of a referee dated October 27, 1977, is hereby affirmed.