Kenneth E. Britten, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Prestige Stations, Inc., Respondents.

Submitted on briefs, December 12, 1980, to Judges WILKINSON, JR., WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*John J. Petrush, Petrush & Miller, Ltd.,* for petitioner.

*Ronald Ganassi, Will & Keisling,* for respondents.

OPINION BY JUDGE PALLADINO, March 18, 1981:

Petitioner (employee) appeals from an order of the Workmen's Compensation Appeal Board (Board) which denied Petitioner's claim for additional total disability benefits. We affirm the Board's order.

On May 19, 1977, in the course of his employment, Petitioner sprained his left ankle. Despite his ankle injury, Petitioner worked from May 21, 1977, until May 26, 1977, on which date he was discharged from employment. On July 8, 1977, Petitioner asserted before an unemployment compensation referee that he was available for work and began receiving unemployment compensation. On January 17, 1978, Petitioner was examined by his physician who determined that Petitioner had arthritis in his left foot. Based upon

the discovery of arthritis, Petitioner filed a workmen's compensation claim on February 21, 1978. Between April 17, 1978, and February 21, 1979, a referee held several hearings on Petitioner's claim. On March 9, 1979, the referee found that Petitioner's work-related ankle injury of May 19, 1977, prevented Petitioner's working from May 29, 1977, until July 8, 1977, and Petitioner was awarded five and 5/7 weeks of temporary total disability compensation.

In this appeal, Petitioner contends that the referee capriciously disregarded competent evidence in failing to find that Petitioner has been totally disabled since January 17, 1978, by arthritis in his left foot, causally connected with his May 19, 1977, work-related ankle injury. "A capricious disregard of competent evidence is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result." *Transue v. Falk's Food Basket of Philadelphia,* 27 Pa. Commonwealth Ct. 156, 158, 365 A.2d 894, 895 (1976) (citation omitted). "This scope of review involves more than mere disbelief of a witness or other competent evidence: it involves such deliberate disbelief of the undoubted testimony or evidence from an apparently trustworthy source as would be repugnant to a man of reasonable intelligence." *Kuchinski v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 210, 212, 392 A.2d 348, 349 (1978) (citations omitted); *Schick v. Newspaper Guild of Greater Philadelphia,* 25 Pa. Commonwealth Ct. 108, 358 A.2d 127 (1976).

Petitioner and Respondent produced extensive expert medical testimony. Both Petitioner's doctor (a physician) and Respondent's doctor (a physician specializing in internal medicine and rheumatology) testified that an x-ray of Petitioner's left ankle (sprained in the course of employment) was within

normal limits. In addition, Respondent's doctor concluded as a result of his December 15, 1977, examination of Petitioner and an x-ray of Petitioner's ankle, that Petitioner "had no objective physical findings from that ankle sprain, but he did have subjective complaints related to it that persisted." Petitioner's doctor testified that when he examined Petitioner on January 17, 1978, Petitioner complained of pain in his left foot and had tenderness in the metatarsal area (top center of the foot).

As part of the examination by Petitioner's doctor, Petitioner was given a latex fixation test used in diagnosing arthritis. The test showed a titer result of one to eighty which Petitioner's doctor interpreted as a "significant positive" indication of arthritis. However, in reviewing this same test, Respondent's doctor judged the result to be a "borderline titer" and added that "[p]atients with a titer of 1:80 or less may fall into the group of idiopathic—without any known cause. . . . [W]hen I did my examination, I found no clinical evidence of rheumatoid arthritis."

On January 17, 1978, Petitioner's doctor also had Petitioner's left foot x-rayed. According to Petitioner's doctor, the x-ray indicated "soft tissue swelling and degenerative changes of the first metatarsal phalangeal joint which is . . . the mid portion of the foot at the base of the great toe." However, Petitioner's doctor stated that Petitioner's ankle injury "did not cause the arthritic condition." Nevertheless, Petitioner's doctor opined that the arthritic condition was a pre-existing condition and concluded that the "injury caused a flare-up of the discomfort in the foot." Additionally, Petitioner's doctor reported that on examining Petitioner in June of 1978, Petitioner was found to have arthritis in his fingers and knuckles.

The foot x-ray ordered by Petitioner's doctor and the medical testimony presented with respect to it

were analyzed by Respondent's doctor. Respondent's doctor asserted that Petitioner's doctor had described Petitioner's complaint as being pain "in the mid-tarsal bone which is the mid-foot, not the first metatarsal phalangeal joint where the x-ray shows the changes." Respondent's doctor agreed with Petitioner's doctor that the x-ray revealed "minimal degenerative changes of the first metatarsal phalangeal joint [at] the base of the first toe," but Respondent's doctor insisted that it was a "very common site of . . . degenerative arthritis" which could be occasioned by normal walking. Respondent's doctor did not "believe that the finding on the x-ray [was] related to the injury."

Finally, Petitioner's doctor testified that while he was unfamiliar with Petitioner's type of job, he could state that as of his examination of Petitioner on January 17, 1978, Petitioner could not "do any work which actually involved use of the foot; in other words, . . . if he had to be on his foot . . . or standing a great deal or walking a great deal, he would not be able to do this. . . ." When asked specifically whether with reasonable medical certainty, Petitioner could return to work as an attendant at a self-service gas station, Respondent's doctor asserted that Petitioner "could return to that type of occupation."

It is well established that in workmen's compensation cases the referee must assess the credibility of the witnesses and weigh the evidence presented. *City of Johnstown v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 464, 381 A.2d 1355 (1978); *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977); *Periodical Press Corp. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 340, 331 A.2d 605 (1975). This Court "cannot say the workmen's compensation authorities have capriciously disregarded

competent evidence merely because they have rejected some competent evidence which conflicts with other, equally competent, evidence." *Workmen's Compensation Appeal Board v. Bali Bra Manufacturing Co.,* 31 Pa. Commonwealth Ct. 643, 646, 377 A.2d 1036, 1038 (1977).

Nor can this Court support Petitioner's further allegation that the referee disregarded *unrebutted,* competent medical evidence. Assuming *arguendo* that Respondent's doctor failed to counter testimony supplied by Petitioner's doctor, "[t]he referee need not accept expert medical testimony even though that testimony is uncontradicted." *Transue* at 159, 365 A.2d at 896. Moreover, in the present case the referee obviously considered the evidence offered by Petitioner's doctor since several of the referee's findings of fact refer directly to the testimony of Petitioner's doctor. The referee simply did not accept the opinion of Petitioner's doctor with respect to the extent of Petitioner's disability. "[T]he factfinder is not bound to accept as true *any* evidence unless that evidence is such that one of ordinary intelligence could not possibly challenge or entertain the slightest doubts as to its truth." *Pennwalt, Stokes Division v. Workmen's Compensation Appeal Board,* 44 Pa. Commonwealth Ct. 98, 102, 403 A.2d 186, 188 (1979) (emphasis in original) (citation omitted); *Gateway Coal Co. v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 608, 388 A.2d 1122 (1978).

Therefore, we affirm the order of the Board denying additional total disability benefits to Petitioner, and we will enter the following

## ORDER

AND Now, March 18, 1981, the order of the Workmen's Compensation Appeal Board, dated September 20, 1979, Docket No. A-76878, is hereby affirmed.