601 A.2d 887

**William CORCORAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (STUART PAINTING COMPANY, and Aetna Life & Casualty Co.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 1991.

Decided Jan. 3, 1992.

Petition for Allowance of Appeal Denied June 2, 1992.

---

400

Raymond F. Keisling, for petitioner.

Dale A. Cable, for respondents.

Before COLINS and BYER, JJ., and BARBIERI, Senior Judge.

BYER, Judge.

The key issue presented in this case is whether the Workmen's Compensation Appeal Board (WCAB) erred in affirming the referee, who rejected the employee's expert medical testimony and credited the employer's expert medical testimony in finding that the employee was no longer disabled and could return to his prior employment.

On September 23, 1986, William Corcoran, who worked as a painter for Stuart Painting Company, suffered a work-related injury to his ribs and right wrist. As a result of this injury, Michael Zernich, M.D., a board-certified orthopedic surgeon, performed carpal tunnel surgery on Corcoran's right wrist.

On February 1, 1987, Dr. Zernich released Corcoran to his pre-injury painting job. However, Corcoran claimed that pain in his right hand prevented him from working. Dr. Zernich reexamined Corcoran on three occasions,[1] and found no objective explanation for the cause of his pain. Stuart Painting filed a petition for termination under section 413 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772, averring

---

1. February 2, 1987, June 3, 1987 and April 4, 1988.

that Corcoran recovered from his work-related injuries and could return to work as a painter effective July 10, 1987.

Corcoran did not return to work, but began therapy with Ruben Tenicela, M.D., a board-certified anesthesiologist. Dr. Tenicela treated Corcoran by performing more than 27 nerve blocks and prescribing "narcotics"[2] for Corcoran's "reflex sympathetic dystrophy." Referee's Finding of Fact 20; (150a–51a).

During the referee's hearing on its petition for termination,[3] Stuart Painting filed a petition for review under section 306(f)(2)(ii) of the act, 77 P.S. § 531(2)(ii),[4] averring that Corcoran received medical services from Dr. Tenicela which were unreasonable, unnecessary and unrelated to his injury. Stuart Painting unilaterally terminated payment for medical expenses as of July 10, 1987.

Dr. Zernich testified that Corcoran exhibited no symptoms of reflex sympathetic dystrophy and could return to work. He also opined that Dr. Tenicela's treatment was unnecessary and unreasonable.

Robert Mantica, M.D., a board-certified orthopedic surgeon, corroborated the testimony of Dr. Zernich and stated that on the basis of his physical examination of Corcoran on July 16, 1987, Corcoran could return to his former job. Dr. Mantica noted that although Corcoran complained of pain in his hand and neck, he could find no neurological deficit nor clinical evidence of carpal tunnel syndrome. Because he

2. Dr. Tenicela testified that he prescribed Methadone, Percocet, Motrin, Elavil, Doxepin, Clinoril and Vistaril for Corcoran's treatment. Referee's Finding of Fact 22; (164a–65a).

3. The referee denied Stuart Painting's request for supersedeas. However, he directed Stuart Painting to deduct $69.40 from the weekly compensation ($347.00) paid to Corcoran and hold it in escrow pending determination of the case.

4. Section 306(f)(2)(ii) of the act, 77 P.S. § 531(2)(ii), provides:
 The employer shall have the right to petition the department for review of the necessity or frequency of treatment or reasonableness of fees for services provided by a physician or other duly licensed practitioner of the healing arts. Such a petition shall in no event act as a supersedeas, and during the pendency of any such petition the employer shall pay all medical bills. . . .

found no evidence of any acute problem, Dr. Mantica questioned the narcotic medications and treatment Dr. Tenicela prescribed.

George White, M.D., a board-certified orthopedic surgeon, operated on Corcoran's right wrist on November 10, 1988 and discovered scarring of Corcoran's median nerve and removed a neuroma of a superficial sensory nerve. Dr. White testified that this relieved some pain in Corcoran's hand, although Corcoran still had pain in his hand when he gripped anything and the pain in his arm, shoulder and neck continued.

The referee granted Stuart Painting's petitions, crediting Drs. Zernich's and Mantica's testimony as reliable, but giving no credence to Drs. Tenicela's and White's testimony. Findings 28 and 29. The referee terminated Corcoran's benefits effective July 10, 1987, concluding that Corcoran's medical condition changed, which permitted him to return to his former employment. The WCAB affirmed the referee.

On appeal, Corcoran argues the referee and the WCAB erred by: (1) capriciously disregarding Dr. White's testimony, and by crediting the equivocal testimony of Dr. Zernich and the inconsistent testimony of Dr. Mantica; and (2) holding that Stuart Painting was not responsible for payment of medical bills from Corcoran's September 23, 1986 work-related injury, from the date the referee terminated benefits until the date the referee filed his decision.

I

Corcoran argues that the referee capriciously disregarded Dr. White's opinion. However, we note:

The "capricious disregard" test is the appropriate standard to apply ... where the burdened party is the only party to present evidence and does not prevail before the agency. In all matters, however, where both parties present evidence, the agency's determination will be reviewed under the "substantial evidence" test as indicated

in [*Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986)].

*Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 440–41, 550 A.2d 1364, 1366 (1988).

In a proceeding to terminate benefits, the employer has the burden of proving that the claimant's disability has terminated, or in the alternative, if the claimant's recovery was less than complete, that he was able to return to his regular job without a loss of earning power. *Laird v. Workmen's Compensation Appeal Board (Curran)*, 137 Pa.Commonwealth Ct. 206, 585 A.2d 602 (1991). In this case, both parties appeared, testified and presented expert testimony at the referee's hearing. Moreover, the burdened party, Stuart Painting, prevailed. Therefore, our review is limited to determining whether the referee or the WCAB made necessary findings of fact not supported by substantial evidence, committed an error of law, or violated constitutional rights. 2 Pa.C.S. § 704.

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). When deciding a substantial evidence question, we must determine whether the entire record contains evidence which a reasonable person might find sufficient to support the referee's findings. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *appeal granted*, 527 Pa. 594, 588 A.2d 915 (1991).

The referee made the following pertinent findings of fact:

12. ... Dr. Zernich testified that [Corcoran] had normal nerve conduction studies and electromyographic studies ... [with] no evidence of nerve root encroachment.... Dr. Zernich did recommend a work-hardening program for [Corcoran] for the purposes of observation but opined

that [Corcoran] should have been able to return to work regardless of the work-hardening program. Dr. Zernich opined that [Corcoran] could ... return to work as of February 1, 1987.

14. Based on his examination, history given by [Corcoran] and review of the medical records, Dr. Mantica opined that with regards to [Corcoran's] hand, neck and upper extremities, he was able to return to his former job as of July 16, 1987, as a painter.

15. ... Dr. Mantica testified that [Corcoran] did have a decrease of his grip strength.... Although Dr. Mantica classified this as good grip strength and that it would not affect [Corcoran's] ability to perform his job duties as a commercial painter.

30. [Stuart Painting] ... sustained its burden of producing evidence on the change in [Corcoran's] medical condition which would permit him to be re-employed at his former job as of July 10, 1987.

(10a, 11a, 15a).

Substantial evidence of record supports these findings.

The referee made no error of law in accepting medical testimony of Stuart Painting's doctors and rejecting medical testimony of Corcoran's doctors. As we stated in *Werner v. Workmen's Compensation Appeal Board (Bernardi Brothers, Inc.)*, 102 Pa.Commonwealth Ct. 463, 518 A.2d 892 (1986):

As to whether necessary findings are supported by substantial evidence, ... the referee may reject or accept the testimony of any witness, even that of a medical witness, in whole or in part. The credibility of witnesses and the weight to be accorded their testimony is the province of the referee ... and even uncontradicted expert medical testimony may be disregarded.

*Id.*, 102 Pa.Commonwealth Ct. at 467–68, 518 A.2d at 894 (citations omitted).

Both Drs. Zernich and Mantica opined that Corcoran could return to his former job as a painter. Neither doctor placed any restrictions on Corcoran's work-related activi-

ties. Although Dr. Mantica examined Corcoran on July 16, 1987, six days after the effective date of termination of benefits, Dr. Zernich examined Corcoran on *three* occasions before and after this date. Dr. Zernich testified that "Corcoran should have been able to return to work at the time that I examined him, on a number of occasions, and I so wrote in my notes." (341a). Therefore, a reasonable person could find that substantial evidence supported the referee's finding that Corcoran was not disabled from performing his former job as of July 10, 1987.

 Next, Corcoran argues that the testimony of Dr. Zernich was equivocal and the testimony of Dr. Mantica was inconsistent. The question of whether medical testimony is equivocal is a question of law that we decide by reviewing the entire testimony of the medical witness. *May Department Stores v. Workmen's Compensation Appeal Board (Smith)*, 105 Pa.Commonwealth Ct. 580, 525 A.2d 33 (1987), *appeal denied*, 516 Pa. 624, 532 A.2d 21 (1987). The medical expert must testify with a reasonable degree of medical certainty. *Sears, Roebuck & Company v. Workmen's Compensation Appeal Board (Moore)*, 48 Pa.Commonwealth 161, 409 A.2d 486 (1979). Medical evidence is unequivocal if the medical expert, after providing a foundation, testifies that in his belief the facts exist. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Commonwealth Ct. 202, 465 A.2d 132 (1983).

Dr. Zernich testified that Corcoran's complaint of pain was subjective (339a) and that Corcoran's right wrist did not require further surgery (347a). Dr. Zernich noted that Corcoran voiced complaints regarding pain. However, Dr. Zernich found no objective explanation for these symptoms nor weakness in Corcoran's grip when Corcoran squeezed his hand (345a). Dr. Zernich testified that on the basis of normal nerve conduction and electromyographic studies, Corcoran demonstrated no evidence of nerve root encroachment (340a). Because of Corcoran's unidentifiable complaints, and the inability of neurologists and neurosurgeons

to identify any problem, he recommended a work-hardening program (341a, 349a).[5]

Dr. Mantica stated that he found no effect on the median nerve's motor parts, no evidence of infection, no inflammation and no reduction of wrist motion (316a–17a). He also wrote to Stuart Painting's workmen's compensation insurer and stated that:

It is conceivable that the infection could have irritated the median nerve, *but if that were the case,* I think that we would see continued inflammation.... I have told [Corcoran] that I find no neurologic deficit on his examination and he no longer has a carpal tunnel syndrome. Also the cranial nerves are all intact on my examination.

(325a–26a) (emphasis added).

■ Although both Drs. Zernich and Mantica were hesitant to discount Corcoran's complaints of pain, we note that:

Mere reluctance by a physician to discount a claimant's unconfirmed subjective complaints *is not tantamount to an implicit admission that the claimant is not fully recovered from a work-related disability.* Not every statement made by a physician need be expressed with absolute certainty and without reservation.

*Williams v. Workmen's Compensation Appeal Board (Montgomery Ward),* 127 Pa.Commonwealth Ct. 587, 593, 562 A.2d 437, 440 (1989) (emphasis added).

5. Dr. Zernich further stated during direct examination:
A. ... So it was my personal feeling that he should have been able to return to work *but I wanted to confirm this* by having this described period of observation available.
Q. How would your opinion be affected, if at all, if he didn't undergo the work-hardening?
A. I would see no reason why he should not undergo that work-hardening program. He certainly has the physical means of doing it. I feel that if a man wanted to get back to work, that he would do all the things that were available to him to obtain that position. *Certainly if a man were having a problem which, up to this point, was unidentifiable,* I would think that he also would want to know whether or not his capabilities were there to permit him to do these things.
(341a–42a) (emphasis added).

Therefore, upon review of the record in this case, we find that Drs. Zernich and Mantica's entire testimony was unequivocal.

■ Corcoran also argues that neither Dr. Zernich nor Dr. Mantica stated that there was a complete resolution of *all* disability. Dr. Mantica testified that he estimated that Corcoran lost 20 to 25 pounds of grip strength (321a). Nevertheless, he noted that this effort-related measurement was not completely objective (322a) and testified that the measured poundage was good (323a) and adequate for his job as a commercial painter (324a). Moreover, after describing the duties of Stuart Painting's painters and the resolution of Corcoran's carpal tunnel condition, Dr. Mantica stated that "with regard to the examination of [Corcoran's] hand and neck and upper extremities that he was able to return to his job as a painter...." (318a).

■ Although Dr. Zernich indicated that Corcoran had subjective symptoms of pain, neither Dr. Zernich nor Dr. Mantica could objectively determine the cause of his pain. Objective medical evidence indicating an absence of abnormalities may rebut subjective symptoms of pain. *Shepherd v. Workmen's Compensation Appeal Board (Shepherd)*, 66 Pa.Commonwealth Ct. 101, 443 A.2d 862 (1982). Therefore, the referee and the WCAB did not err in concluding that Stuart Painting met its burden of proving that Corcoran possessed no work-related disability and could return to his former job as of July 10, 1987.

## II

■ Corcoran argues that Stuart Painting's petition for review, questioning the necessity of his medical expenses may not act as an automatic or discretionary supersedeas; therefore, Corcoran asserts that Stuart Painting is required to continue payment of his medical expenses until the date of the referee's decision.

This case is factually similar to *Moats v. Workmen's Compensation Appeal Board (Emerald Mines Corpora-*

*tion),* 138 Pa.Commonwealth Ct. 449, 588 A.2d 116 (1991). In *Moats,* the employer filed a termination petition and a request for supersedeas which a referee denied. However, the employer ceased paying the claimant's medical expenses and filed a petition to review the necessity or reasonableness of the medical bills. The referee granted both petitions and the WCAB affirmed. On appeal, we reversed and stated:

> It is a clear and unacceptable violation of the Act for an employer to unilaterally refuse to pay a claimant's medical bills. If an employer disputes the reasonableness or necessity of a claimant's medical bills or treatment, it may petition for review of these matters pursuant to Section 306(f)(2)(ii) of the Act, 77 P.S. § 531(2)(ii). The filing of a petition under this section, however, may not act as a supersedeas; and the employer shall be responsible for paying all medical bills incurred during the pendency of the petition. Further, any relief granted an employer pursuant to Section 306(f)(2)(ii) is *prospective only as of the date the referee determines that the medical expenses are unreasonable or unnecessary;* the employer may not ... be relieved of paying past medical bills. If an employer has paid medical bills later determined to be unreasonable or unnecessary, it may seek reimbursement from the Supersedeas Fund.

*Id.,* 138 Pa.Commonwealth Ct. at 453–54, 588 A.2d at 118 (citations omitted) (emphasis added).

Therefore, the WCAB erred in affirming the referee's decision to relieve Stuart Painting from liability for medical expenses from July 10, 1987 to the date of the referee's decision, October 27, 1989. Therefore, we must reverse that portion of the WCAB's order which relieves Stuart Painting from paying Corcoran's medical expenses incurred before the referee's decision. Stuart Painting must pay all of Corcoran's medical expenses and costs for diagnosis, care and treatment of his work-related injury until the date the

referee terminated benefits.[6]

\* \* \* \* \* \*

For the above reasons, we affirm in part and reverse in part.

### ORDER

We reverse the order of the Workmen's Compensation Appeal Board to the extent that it denies payment for medical expenses and costs between July 10, 1987 and the date of the referee's decision and direct Stuart Painting Company and its workmen's compensation insurer, Aetna Life & Casualty Company, to pay all medical expenses and costs incurred by William Corcoran related to his September 23, 1986 injury until October 27, 1989. In all other respects, we affirm the order of the Workmen's Compensation Appeal Board.

---

**6.** "It is clear, however, that allowing an employer to unilaterally refuse payment of medical bills, on the chance that the [WCAB] will later find those bills unreasonable or unnecessary, is a violation of both the letter and spirit of the Act." *Johnson v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center),* 137 Pa.Commonwealth Ct. 176, 180 n. 1, 586 A.2d 991, 993 n. 1 (1991). However, an employee, who fraudulently incurs medical expenses or costs to justify the continuation of workmen's compensation benefits, also violates the letter and spirit of the act. *See Phillips v. Workmen's Compensation Appeal Board (Edgar Construction Co.),* 519 Pa. 31, 545 A.2d 869 (1988).