646 A.2d 678

ROTOBLAST ABRASIVES and c/o
Gates, McDonald, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD
(Frank HOCKENBERRY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 1994.

Decided Aug. 3, 1994.

384

James R. Schmitt, for petitioners.

George H. Thompson and Alexander J. Pentecost, for respondent.

Lori Ann Gala, for intervenor.

Before DOYLE and NEWMAN, JJ., SILVESTRI, Senior Judge.

DOYLE, Judge.

Before the Court is an appeal by Rotoblast (Employer) from an order of the Workmen's Compensation Appeal Board which affirmed the workers' compensation judge's (WCJ) decision to grant benefits to Frank Hockenberry (Claimant).

On March 12, 1982, Claimant, a furnace operator, suffered a work related injury when his shirt caught fire while he was shovelling silicate in a furnace. He was thrown to the floor and rolled around by co-workers attempting to put out the fire. Claimant hit the back of his neck on a beam plate as he fell to the floor. Claimant suffered burns over twenty-five percent of his body, but did not immediately complain of an injury to his neck as a result of being thrown to the floor, nor when he was admitted to the hospital for treatment of his severe burns, did he complain of any injury to his neck. (The WCJ found that in light of the severity of Claimant's burns and the amount of pain he was suffering, that this failure did not detract from Claimant's credibility.) A few weeks after his injury, however, Claimant noted a "pinching and jabbing" in his neck.

Employer issued a notice of compensation payable on March 29, 1982, for the burns Claimant sustained to his left side, arms and legs, and he received disability benefits until November 14, 1982.[1]

On November 15, 1982, Claimant returned to his preinjury job of furnace operator, where he was required to lift up to eighty pounds overhead, to shovel, and to use a bar to open a doorway or tip a bucket. Initially, Claimant had some help with the heavy lifting after his return to work, but later he performed this job without restrictions. He continued to

1. According to Claimant's petition for reinstatement, and as noted by the Board, a suspension was entered December 14, 1983.

experience pain and stiffness in his neck. Claimant performed this job until August 1986.[2]

On October 15, 1986, Claimant filed a petition for reinstatement of benefits, alleging that he was no longer able to perform his time of injury job, and required an operation for the injury to his neck which resulted from the March 12, 1982 injury. At the same time, Claimant filed claim petitions for other injuries unrelated to his March 12, 1982 injury, which occurred on July 3, 1986 and August 13, 1986.[3] Each of these injuries were timely and properly reported to Employer. These petitions were consolidated for consideration by the WCJ.[4]

At the hearing, Workers' Compensation Judge Ada Guyton heard the testimony of Claimant as well as medical testimony introduced by both Claimant and Employer. In her analysis of Claimant's July 3, 1986 neck injury, the WCJ found that Claimant noted neck pain before he went to work. While he was at work using a bar to knock the doorway out of the furnace, the pain worsened. Since the pain radiated into his chest, he went to the emergency room.

Claimant's doctor, Dr. John Blakely, testified that the July 3rd injury was an "aggravation" of the injury Claimant had

**2.** From August 1986, until the plant where Claimant worked closed on October 15, 1986, Claimant operated a forklift, stacking and moving drums.

**3.** In Claimant's petition for benefits he alleged that this injury occurred "on or about August 7, 1986," but the referee found as fact that the incident occurred on August 13, 1986. Finding of Fact No. 29.

**4.** The referee also considered two other claim petitions, one alleging that on October 7, 1986, Claimant sustained an injury to his right leg, and another alleging that on January 24, 1986, he sustained an injury to his back when he fell on a plate.

The referee found that Claimant was not disabled from the January 24, 1986, injury as he lost no time from work, and was not significant "as [Claimant] could not remember what had occurred on that date as evidenced by the conflicting descriptions in the accident report, Dr. Corbett's records and the claimant's own testimony." Finding of Fact No. 36. Similarly, she found that Claimant was not disabled from the October 7, 1986 injury, since he produced no evidence to contradict Employer's medical testimony that this injury was totally resolved. Accordingly, these petitions were dismissed, and were not appealed.

suffered on March 12, 1982. However, the WCJ did not find this portion of his testimony credible because:

(a) Doctor Blakely testified his opinion would change if the claimant's neck pain had begun at home,

(b) Doctor Blakely testified the claimant's condition had remained pretty much the same since 1983, and

(c) Doctor Corbett found the 7/3/86 incident to be non-work related.

Finding of Fact No. 34. Accordingly, the WCJ concluded that Claimant had failed to sustain his burden of proof regarding work relatedness, and dismissed this petition.

However, the WCJ found that Claimant succeeded in proving that he was disabled from performing his pre-injury job because of the injury he sustained on August 13, 1986, when he stepped on a plate and fell, injuring his back. She specifically found Claimant's medical testimony concerning this injury to be credible and rejected the medical testimony proffered by Employer. Accordingly, the WCJ concluded that Claimant was entitled to benefits for this injury as of October 16, 1986. This conclusion by the WCJ was not appealed.

Finally, WCJ Guyton found that Claimant was entitled to benefits for the recurrence of his March 12, 1982, injury. Specifically she found that:

[B]ased on the most credible testimony of Doctor Blakely ... on 10/16/86 the claimant's disability due to his 3/12/82 neck injury recurred. This Referee finds Doctor Blakely's opinion to be supported by objective findings noted consistently throughout his examinations of the claimant and by the absence of left bicep reflex which was noted by Doctor Medlock [Employer's medical witness]....

Finding of Fact No. 33. The WCJ went on to specifically reject Employer's conflicting medical testimony as not credible. Therefore, WCJ Guyton concluded that Claimant was entitled to a reinstatement of his benefits for the March 12, 1982 injury.

Employer rebutted Claimant's evidence of total disability by presenting evidence of available work within Claimant's limita-

tions. Although the WCJ found three of the positions presented by Employer to be inappropriate, she found four other jobs to be within the restrictions prescribed by Claimant's doctors for both the March 12, 1982 and the August 13, 1986 injuries. WCJ Guyton found that Claimant acted in bad faith by failing to apply for any of these jobs. The job first available to Claimant of these began August 16, 1988. Therefore the WCJ concluded that Claimant was entitled to total disability benefits for the period of October 16, 1986, until August 16, 1988. Thereafter, Claimant was only entitled to partial disability benefits. Claimant did not appeal this conclusion by the WCJ.

After concluding that Claimant was entitled to benefits for both his March 12, 1982 injury and his August 13, 1986 injury, WCJ Guyton made the following conclusion of law:

Benefits for the 8/13/86 injury are suspended beginning 10/16/86 as the claimant is entitled for [sic] benefits for his 3/12/82 injury beginning 10/16/86 and cannot receive compensation for both injuries. Payments were ordered for the 3/12/82 injury since the 3/12/82 injury occurred first and since the 3/12/82 injury, by itself, prevents the claimant from performing his pre-injury job of furnace operator.

Conclusion of Law No. 5. Thus, Employer was ordered to pay total disability benefits due to the March 12th injury from October 16, 1986, until August 16, 1988.[5] From August 16, 1988, continuing for five hundred weeks, Employer was ordered to pay Claimant partial disability benefits. When these benefits for the March 12th injury conclude, partial disability benefits for the August 13th injury must be paid by SWIF, Employer's insurer at the time Claimant sustained this injury. Employer appealed to the Board which affirmed the order of the WCJ, and this appeal followed.

On appeal, Employer contends that the WCJ erred (1) in finding that Claimant suffered a recurrence of his March 12, 1982 injury, (2) in accepting Dr. Blakely's testimony concerning this recurrence, but rejecting his testimony opining that

---

**5.** At the time the March 1982 injury occurred, Employer was self-insured.

Claimant's July 3, 1986 neck incident was an aggravation of the 1982 injury, (3) in suspending Claimant's benefits for the August 13, 1986 injury, and (4) in awarding consecutive periods of partial disability benefits.

Employer first argues that the WCJ's conclusion that Claimant suffered a recurrence of his March 12, 1982 injury is not supported by substantial evidence and her conclusion that Claimant did not suffer an aggravation on July 3, 1986, is erroneous because she rejected a portion of Dr. Blakely's testimony.

 It is an unassailable tenet of worker's compensation law that a WCJ is entitled to accept or reject, in whole or in part, the testimony of any witness. *Corcoran v. Workmen's Compensation Appeal Board (Stuart Painting Co.)*, 144 Pa.Commonwealth Ct. 398, 601 A.2d 887, *petition for allowance of appeal denied*, 530 Pa..657, 608 A.2d 31, and 531 Pa. 641, 611 A.2d 713 (1992). Moreover, this Court will not consider other testimony which might support factual findings different from those of the WCJ. *Vitelli v. Workmens' Compensation Appeal Board (St. Johnsbury Trucking Co.)*, 157 Pa.Commonwealth Ct. 589, 630 923, 630 A.2d 923 (1993). After carefully reviewing the testimony in the record we find that the WCJ's findings of fact are supported by substantial evidence.

 Employer suggests that the WCJ's conclusion that Claimant suffered a recurrence of his 1982 injury is belied by the fact that Claimant returned to work in November 1982, and continued to work until October 1986. However, the fact that Claimant returned to work is not relevant in determining whether Claimant suffered a recurrence of his disability. Claimant's benefits for his 1982 injury were *suspended*.[6] The effect of a suspension is only that a claimant's earning power is no longer affected by his injury, but the injury still exists and the employer continues to be liable. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301

6. There is no evidence, nor does Employer contend that these benefits were ever terminated, which would terminate Employer's liability.

(1990). The WCJ found Dr. Blakely's testimony on this point credible and competent. She rejected the medical testimony presented by Employer, and we will not disturb that determination.

Employer points out that Claimant did not report an injury to his neck at the time of the March 1982 incident. However, Employer does not argue that it did not have notice of Claimant's neck injury, but merely questions Claimant's credibility for not reporting a neck injury when he was admitted to the hospital for treatment of his burns. The WCJ specifically found that this fact does not detract from Claimant's credibility, and this conclusion is supported by testimony of Dr. Blakely. *See* Deposition of John Blakely, M.D. at 18.

■ Further, even if this testimony was not legally sufficient, Claimant's loss of earning power recurred when Employer's plant closed and Claimant was laid off. For this reason alone, Claimant would be entitled to a reinstatement of benefits. *Pieper; Fells v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.,* 122 Pa.Commonwealth Ct. 399, 552 A.2d 334 (1988).

■ Employer also contends that the WCJ erred in rejecting the portion of Dr. Blakely's testimony where he contends that Claimant's July 3, 1986 neck injury is an aggravation of his March 1982 injury. We find the WCJ's conclusion that Claimant's July 3rd injury was not work-related supported by the evidence, and her rejection of portions of Dr. Blakely's testimony logical. Employer cites us to a portion of Dr. Blakely's deposition where he testified as follows:

Q: If [Claimant] had neck pain just prior to going to work on July 3 or July 4, 1986, then you would relate it to the fact that he had it before he went to work?

A: That's possible. That's true. However, the acute occurrence of chest pain here makes me feel this is an acute flareup of this problem from the pushing on the bar. That would be the most logical.

Deposition of Dr. Blakely at 33. Employer suggests that WCJ Guyton misinterpreted that testimony when she conclud-

ed that Dr. Blakely's testimony would change if Claimant's pain had begun at home. However, Dr. Blakely also testified that:

Q: If you have the type of history that is reported at the Butler Hospital and the type of history that he has testified to, you would not necessarily make the causal relationship that you have made, would you?

A: Well, if he had neck pain beforehand, why, I would not.

Q: If that is what he testified to, based on that testimony, you would not causally relate his neck pain to anything that happened at work on July 3 or July 4, would you?

A: All he told me was he pushed on a heavy bar and developed acute pain.

Deposition of Dr. Blakely at 39. Moreover, the WCJ also found that Claimant's other doctor, Dr. Corbett, had a notation in his notes after examining Claimant that the July 3rd injury was not work related. Clearly, the WCJ had sufficient evidence to conclude that the injury Claimant suffered in July 1986 was not work related.

 Employer next argues that the WCJ erred in requiring Employer to pay benefits first for the recurrence of the March 1982 injury instead of requiring SWIF to pay benefits first for the August 1986 injury, citing our decision in *East West Equipment Company v. Workmen's Compensation Appeal Board (Monarch Circuit Industries)*, 128 Pa.Commonwealth Ct. 18, 562 A.2d 958 (1989).

We can find no error of law in the WCJ's decision to allocate liability first to the March 1982 injury. Her reason for doing so is logical and well reasoned, namely (1) the March 1982 injury occurred first, and (2) that injury alone prevents Claimant from performing his preinjury job. Further, Claimant's pre-injury average weekly wage in March of 1982 was $462.53; the pre-injury wage in August of 1986 was $441.90. The Board noted, and we agree that "[i]n view of the liberal nature of the Act, ... it [is] appropriate that the compensation awarded was for the injury paying the greatest compensation." Board Opinion at 4.

*East West Equipment* is distinguishable from the facts of this case. In *East West Equipment* the claimant suffered from two distinct injuries, one occurring in 1978 and the other occurring in 1980 while the claimant was employed by a second employer at a light duty job. The second employer issued a notice of compensation payable for the later 1980 injury, and the claimant was then laid off from his second job. Subsequently, both employers petitioned for termination which were consolidated by the WCJ for disposition. The WCJ denied both petitions and apportioned liability equally between both employers. The Board reversed and on remand the WCJ determined that the 1980 injury was a recurrence of the 1978 injury, and deemed the first employer solely responsible for disability benefits. The Board affirmed. On appeal, this Court determined that the claimant's disability was due *both* to a recurrence of the claimant's 1978 injury *and* to further injury resulting from the 1980 injury. However, because there was no provision in the Act allowing an allocation of liability between the two employers, we held that the second employer was liable because it had accepted liability by issuing the notice of compensation payable. There is no similar circumstance in the present case which would compel us to disturb the WCJ's determination that liability should be allocated to the later injury instead of the earlier injury.

■ Finally Employer argues that the WCJ erred in awarding consecutive periods of partial disability. We disagree. In the case before us now Claimant suffered two separate, distinct, and unrelated injuries which resulted in a loss of earning power. Claimant is entitled to partial disability after August 1988 because he could have been working at a light duty job had he made a good faith effort to apply for that job. It is true, as Employer points out, that Section 306(b) of the Act [7] limits the period of eligibility for partial disability for five hundred weeks. But this limitation is for each disability, not for the lifetime of an individual claimant. Since Claimant

7. The Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512.

suffered two distinct injuries, he is entitled to benefits for both. It is merely fortuitous that they overlap in time.

Since there was no error in the WCJ's analysis of Claimant's petition for reinstatement and claim petition, the order of the Board is affirmed.

## ORDER

NOW, August 3, 1994, the order of the Workmen's Compensation Appeal Board in the above captioned matter is hereby affirmed.