705 A.2d 1290

Susan UDVARI,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (USAIR, INC.)

Appeal of USAIR, INC.

Supreme Court of Pennsylvania.

Argued March 3, 1997.

Decided Dec. 24, 1997.

320

Patricia L. Wozniak, Pittsburgh, for USAir, Inc.

Thomas Shannon Barry, Pittsburgh, for Susan Udvari.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

We must determine whether there is substantial evidence to support the termination of the claimant's workers' compensation benefits. The Commonwealth Court held that there is not. We reverse.

Appellee, Susan Udvari, was employed as a lead flight attendant by Appellant, USAir Inc. On January 15, 1992, Udvari sustained neck and shoulder injuries when an aircraft in which she was working ran into a snow bank while attempting to depart. Pursuant to a notice of compensation payable, Udvari received workers' compensation benefits. On February 8, 1993, USAir filed a petition for termination, alleging that all disability associated with the work injury had ceased as of February 4, 1993. Udvari returned to work on May 1, 1993.

Following several hearings where both parties presented expert medical testimony, the workers' compensation judge (WCJ) granted the termination petition. It credited the testimony of USAir's expert witness, Paul S. Lieber, M.D., who testified that as of February 3, 1993, Udvari had completely recovered from her work injury and no longer required treatment. On appeal, the Workmen's Compensation Appeal Board affirmed, finding that Dr. Lieber's testimony constituted substantial evidence to support the termination of benefits.

The Commonwealth Court reversed. 667 A.2d 433 (Pa. Cmwlth.1995). It noted that Dr. Lieber "clearly, unequivocally and consistently testified that he diagnosed Udvari with chronic muscular strain and multiple contusions from the work injury, that these were completely resolved as of the time of his examination, that Udvari was completely healed and that there was no reason for 'any further medical, chiropractic, physical therapy or diagnostic tests.'" *Id.* at 434 (citation omitted). However, the court held that because Dr. Lieber diagnosed Udvari with "symptom magnification syndrome" and testified regarding Udvari's continuing pain, the termination of benefits was improper. Instead, a suspension of

benefits was appropriate because the WCJ credited Dr. Lieber's testimony that Udvari was able to return to work despite her residual pain and symptom magnification syndrome.

The scope of appellate review in a workers' compensation proceeding is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact are supported by substantial evidence. *Gumro v. Workmen's Compensation Appeal Board,* 533 Pa. 461, 626 A.2d 94 (1993). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Bethenergy Mines, Inc., v. Workmen's Compensation Appeal Board,* 531 Pa. 287, 292, 612 A.2d 434, 436 (1992). In order to terminate benefits, the employer must establish that all disability related to a compensable injury has ceased. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990).

USAir contends that substantial evidence exists to grant a termination petition where there is expert medical testimony that the claimant is fully recovered and can return to work without restrictions and there are no objective findings supporting subjective complaints of pain. It argues that this is true even if the medical expert testifying on behalf of the employer acknowledges the claimant's pain. USAir relies on *Shepherd v. Workmen's Compensation Appeal Board,* 66 Pa. Cmwlth. 101, 443 A.2d 862 (1982) and its progeny.

In *Shepherd,* a hearing was held on the employer's termination petition wherein conflicting evidence was presented regarding the claimant's injury. The physician testifying on behalf of the employer stated that he was aware of the claimant's complaints of pain but that he believed the claimant was fully recovered and could work without restrictions. The referee credited this testimony and granted the termination petition.

The Commonwealth Court affirmed the termination of benefits and stated

Neither *Pennwalt, Stokes Division v. Workmen's Compensation Appeal Board,* 44 Pa.Commonwealth Ct. 98, 403 A.2d 186 (1979) nor *Workmen's Compensation Appeal Board v. F.W. Woolworth Co.,* 19 Pa.Commonwealth Ct. 413, 338 A.2d 784 (1975) stand for the proposition advanced by Shepard that the referee must find in favor of a claimant who complains of continued subjective symptoms even in the absence of medical evidence of an objective basis for his complaints. The question is factual and must rest with the factfinders. The cases cited simply state that the referee may consider in making his findings the claimant's subjective complaints as well as other medical evidence.

*Id.* 443 A.2d at 863–64.

The Commonwealth Court's holding in *Shepherd* has been followed in various termination cases. See *Jenkins v. Workmen's Compensation Appeal Board,* 677 A.2d 1288 (Pa. Cmwlth.1996) (termination proper where referee credited employer's medical expert who testified that he acknowledged claimant's complaints of pain but found no objective basis for them); *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery),* 677 A.2d 1314 (Pa.Cmwlth.1996) (when credited medical expert testimony establishes no objective evidence of ongoing disability and claimant was fully recovered, termination proper despite claimant's contentions of continued pain); *Kerns v. Workmen's Compensation Appeal Board (Colt Resources, Inc.),* 149 Pa.Cmwlth. 268, 613 A.2d 85 (1992) (same); *Allen v. Workmen's Compensation Appeal Board (The Leathercraft Company),* 150 Pa.Cmwlth. 302, 615 A.2d 927 (1992) (same); *Corcoran v. Workmen's Compensation Appeal Board (Stuart Painting Company),* 144 Pa.Cmwlth. 398, 601 A.2d 887 (1992) (same); *Laird v. Workmen's Compensation Appeal Board (Michael Curran & Associates),* 137 Pa.Cmwlth. 206, 585 A.2d 602 (1991) (termination proper where referee accepted employer's expert medical testimony that claimant was totally recovered even though he had no reason to question the claimant's complaints of pain); *Williams v. Workmen's Compensation Appeal Board (Montgomery Ward),* 127 Pa.Cmwlth. 587, 562 A.2d 437 (1989) (mere

reluctance by a physician to discount a claimant's unconfirmed subjective complaints is not tantamount to an implicit admission that claimant is not fully recovered).

The proposition relied on by the Commonwealth Court regarding the effect of a medical expert's acknowledgement of the claimant's pain seemingly arose in *Rogers Motor Lines, Inc., v. Workmen's Compensation Appeal Board (Kenneth E. Baker)*, 144 Pa.Cmwlth. 493, 601 A.2d 934 (1992). In *Rogers*, the employer filed a termination petition, alleging that the claimant had fully recovered from his work-related disability. The referee found that the employer failed to sustain its burden of proof for a termination of benefits because it did not establish that the claimant's problems were a result of an injury other than the work-related injury. The Commonwealth Court affirmed, noting that the referee did not find that the claimant's disability had ceased. It further stated, "even Employer's doctor acknowledged that [Claimant] had continuing pain." *Id.* at 935.

Although the holding in *Rogers* was that the employer failed to prove that the injury had ceased, subsequent cases have cited *Rogers* for the proposition that the "finding of full recovery would not be supported by substantial evidence if the medical expert testifying for the defendant acknowledged the existence of continued pain suffered by the claimant." *McFaddin v. Workmen's Compensation Appeal Board (Monongahela Valley Hospital)*, 153 Pa.Cmwlth. 252, 620 A.2d 709, 711 (1993).

In *Moltzen v. Workmen's Compensation Appeal Board (Rochester Manor)*, 166 Pa.Cmwlth. 589, 646 A.2d 748 (1994), the referee terminated the claimant's benefits on the ground that she was fully recovered. The referee credited the testimony of the employer's doctor who stated that he believed the claimant had continuing lower back pain, but that this pain was unrelated to her work injury. The Commonwealth Court reversed. Noting that credibility determinations are matters to be decided by the factfinder, the court accepted the referee's finding that the claimant's back pain was unrelated to her work injury. However, the court found that the employer's

medical expert also testified that the claimant suffered from pain in her knee which was attributable to the physical therapy the claimant was undergoing for the work injury. The court concluded that because the knee pain was a result of the initial work injury, benefits should not have been terminated. The court cited *McFaddin* for the same proposition stated above regarding the improper termination of benefits when the employer's physician acknowledges the claimant's pain.

In these cases, the term "acknowledge" was used in the context of the employer's medical expert accepting the fact that the claimant suffered from pain, yet failing to opine that the pain was unrelated to the work injury. The term was not used to describe the medical expert's mere recognition that the claimant *complained* of pain. In each case, the factfinder evaluated the evidence and credited either the claimant's version of the facts or that of the employer.[1]

---

1. In his concurring opinion, Mr. Justice Cappy suggests that we have created two legal standards: one applicable where an employer's expert "recognizes" the claimant's complaints of pain and one applicable where an employer's expert "attests to" or "supports" the claimant's complaints of pain. He emphasizes that when an employer's medical expert acknowledges, attests to, or supports the existence of a claimant's ongoing pain, the expert must also opine that the pain is unrelated to the work injury for the employer to be successful in a termination proceeding. While we do not necessarily disagree with this particular proposition as applied in some circumstances, the statement needs clarification.

The fact that an employer's medical expert testifies that he believes that the claimant continues to suffer pain from a work injury does not *automatically* preclude the termination of benefits. Termination is only precluded when this testimony is credited by the WCJ. If the contrary were true, the physician would in effect become the factfinder. Credibility determinations are made solely by the WCJ, who has the authority to accept the testimony of a witness in whole or in part. *Hartner v. Workmen's Compensation Appeal Board,* 146 Pa.Cmwlth. 167, 604 A.2d 1204 (1992), alloc. denied, 531 Pa. 662, 613 A.2d 1210 (1992). The WCJ always has the option in any termination case to find that the testimony in support of continuing pain is incredible. If there is substantial evidence to support the WCJ's findings of fact that a particular claimant has fully recovered, can return to work without restrictions, and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury, the termination of benefits is proper *regardless of any evidence presented to the contrary.*

 The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ. In the absence of objective medical testimony, the WCJ is neither required to accept the claimant's assertions, nor prohibited from doing so.[2] Testimony by the employer's medical expert as to the *existence* of the claimant's *complaints* of pain does not require the WCJ to find for the claimant. A contrary conclusion would lead to the absurd result that a claimant could forever preclude the termination of benefits by merely complaining of continuing pain. What is relevant in deciding whether the termination of benefits is warranted is whether the claimant suffers from pain as a result of the work-related injury.

 We must keep in mind that the employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury.[3] If the WCJ credits this testimony, the termination of benefits is proper.

 Contrary to the holding of the Commonwealth Court, we find that USAir met its burden of proof in the instant case.

2. It is well-established that a medical expert's failure to find an objective basis for a claimant's assertion of pain does not, by itself, establish that the claimant has fully recovered and that termination is warranted. *JAB Enterprises v. Workmen's Compensation Appeal Board (Haehn),* 79 Pa.Cmwlth. 638, 470 A.2d 210 (1984).

3. We emphasize that the failure of the employer's expert to employ these "magic words" is not fatal to the employer's claim. Instead, the expert testimony must be reviewed in its entirety to determine whether the conclusions reached are sufficient to warrant termination of benefits. See *Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.),* 132 Pa.Cmwlth. 47, 571 A.2d 1108 (1990) (physician need not say magic words that claimant was "fully recovered;" sufficient that physician testified to releasing claimant to work without restrictions because work-related injury was resolved).

As noted, Dr. Lieber clearly and unequivocally testified that Udvari was completely healed and required no further treatment. The Commonwealth Court found the termination of benefits improper, however, based on the fact that Dr. Lieber diagnosed Udvari with "symptom magnification syndrome" and testified regarding her pain.

Reviewing Dr. Lieber's testimony in its entirety, it is clear that "symptom magnification syndrome" is not a separately diagnosed illness, but is rather a term used to describe Udvari's exaggeration of symptoms. Dr. Lieber testified that Udvari responded inconsistently to various physical tests and did not react as would be expected of an individual who suffered from the pain she described. He further testified that Udvari's behavior during the examination was abnormal. Dr. Lieber stated that Udvari appeared hostile and angry, exhibited rapid pressured speech and sobbed when he lightly palpated her skin.

When asked to explain what he meant by the term "symptom magnification syndrome," Dr. Lieber stated

Symptom magnification syndrome can be a diagnosis that can be anything from malingering to psychogenic pain. There's a large continuum in between where people embellish their symptoms for a myriad of reasons.

In this case there were many nonphysiologic findings, which I describe during the course of my examination, which were inconsistent with what would be expected for normal routine examination.

R. 81a. When asked what he meant by that, he responded

That there was no physiologic basis for the patient's pain and that there was no evidence that the patient was voluntarily or maliciously trying to deceive me or anybody else but was fully invested in these complaints without evidence that they were physiologically present.

Id.

Dr. Lieber later realized that Udvari's counsel was suggesting that symptom magnification syndrome was a distinct disorder. To clarify the misunderstanding Dr. Lieber stated

I see what your point is. I think that what we're getting at is the fact that I thought this woman was a symptom magnifier and her pain complaints were subjectively based. *I am not trying to describe it as a disease entity unto itself.* I'm not calling her— specifically making a statement that this woman has a chronic pain syndrome that is amenable to any specific treatment.

The point was that this person did not have pain for which there was any objective basis on my examination and that I couldn't find anything wrong with her. And so rather than not provide a diagnosis, I provided some diagnosis there.

But the treatment basically is to return to work so that she can get into a more functional existence because there's nothing that I could find that was physiologically abnormal.

R. 106a (emphasis added).

It is clear from this testimony that symptom magnification syndrome is not a compensable disorder arising from the work-related injury.

It is equally clear that Dr. Lieber's reference to Udvari's pain does not preclude the termination of benefits. The Commonwealth Court relied upon the underlined portion of the following exchange between Dr. Lieber and Udvari's counsel.

A. I think we've gotten off track here, and if my making this diagnosis of symptom magnification syndrome has gotten us off track, then I have misrepresented myself in the diagnosis.

And what I am trying to impart is, again, that she embellished her symptoms, for whatever reasons, I don't know; that I could find nothing wrong with this woman; that I thought she was fully recovered; and that she should return to work.

Q. And you don't consider her to be a malingerer?

A. A malingerer?

Q. Yes.

A. I'm reluctant to call her a malingerer because I think that that attaches a certain stigma and that I am not convinced that she was lying to me.

Basically there are some people who I am convinced are lying to me, but I'm not convinced that she was lying to me. You know, in other words, what I'm trying to say is *she might believe that she has this pain. I'm going to give her the benefit of the doubt in that regard.*

R. 107a–108a.

■ This fleeting reference does not establish that Udvari continued to experience pain as a result of the work-related injury. It merely suggests that Dr. Lieber was giving Udvari "the benefit of the doubt" that she *believed* that she experienced some sort of pain. Dr. Lieber repeatedly testified that there was no objective basis for her complaints and that he believed the symptoms were exaggerated. Unlike the situation in *Rogers,* the factfinder here credited Dr. Lieber's clear and unequivocal testimony that the injury had ceased. This case is also distinguishable from *Moltzen* as there was no credited testimony establishing that any residual pain was attributable to the initial compensable injury. An appellate court cannot, by implication, decide that an expert's opinion was contrary to the opinion he directly and clearly stated. *Laird v. Workmen's Compensation Appeal Board,* 137 Pa. Cmwlth. 206, 585 A.2d 602, 604 (1991).

Accordingly, the order of the Commonwealth Court is vacated and the order of the Workmen's Compensation Appeal Board is reinstated.

NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a concurring opinion in which NIGRO, J., joins.

CAPPY, Justice, concurring.

I join the majority opinion but write separately to set forth my understanding of the applicable legal standard which the

majority announces today. Also, I write to emphasize, consistent with the majority opinion, the continuing requirement that when an employer's medical expert does acknowledge, attest to or support the existence of a claimant's ongoing or continuous pain, that expert must also opine that the pain is unrelated to the work injury for the employer to be successful in a termination proceeding.

First it is necessary to recognize the considerable burden an employer faces in a termination proceeding. Disability is presumed until demonstrated otherwise. Thus, in order to obtain a termination of benefits, it is the employer's burden to prove that "all disability related to a compensable injury has ceased." *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 31–32, 584 A.2d 301, 304 (1990).

The majority holds that in termination proceedings where the claimant complains of continued pain, an employer may meet its burden if its medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. Maj. Op. at pp. 1293–1294. With this I agree.

However, in reaching this holding, the majority carefully distinguishes prior Commonwealth Court precedent which addressed the issue of an employer's medical expert's acknowledgement or support of the claimant's pain.[1] The majority cogently notes that in those cases, "the term 'acknowledge' was used in the context of the employer's medical expert accepting the fact that the claimant suffered from pain, yet failed to opine that the pain was unrelated to the work injury." Maj. Op. at p. 1293. Conversely, the majority emphasizes that the term "was not used to describe the medical expert's mere

---

1. *Moltzen v. Workmen's Compensation Appeal Board (Rochester Manor),* 166 Pa.Cmwlth. 589, 646 A.2d 748 (1994); *McFaddin v. Workmen's Compensation Appeal Board (Monongahela Valley Hospital),* 153 Pa. Cmwlth. 252, 620 A.2d 709 (1993); *Rogers Motor Lines, Inc. v. Workmen's Compensation Appeal Board (Kenneth E. Baker),* 144 Pa.Cmwlth. 493, 601 A.2d 934 (1992).

recognition that the claimant *complained* of pain." Maj. Op. at pp. 1293 (emphasis original).

Thus, by distinguishing these cases, I believe, and the majority makes clear, that two legal standards emerge from this case. First, if an employer's medical expert merely recognizes a claimant's complaints of pain, the employer's burden in a termination proceeding will be satisfied if the expert unequivocally testifies to a full recovery, a return to work without restriction, and no objective medical findings regarding the claims of pain, as stated above.

However, and I emphasize, if an employer's medical expert does acknowledge, attest to or support the existence of the claimant's ongoing or continuous pain, then he or she must also specifically opine that the pain is unrelated to the work injury for the employer to be successful in a termination proceeding. This standard derives from, and is required by, the employer's burden to prove that all work-related disability has ceased. *Pieper.*

Applying its holding to the case *sub judice,* the majority properly determines that USAir met its burden of proof. The majority specifically finds that USAir's medical expert's reference to Ms. Udvari's complaints of pain did not preclude the termination of benefits. Rather, the majority explains that USAir's expert gave Ms. Udvari "the benefit of the doubt" that *she believed* that she experienced some sort of pain, i.e., that the expert merely recognized that Ms. Udvari complained of pain. As USAir's medical expert did not acknowledge that Ms. Udvari suffered from pain, he was not required to opine that such pain was unrelated to the work injury for USAir to be successful in its attempt to terminate Ms. Udvari's benefits.

For the above stated reasons, I join in the majority opinion.

NIGRO, J., joins this concurring opinion.