IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alisha Edwards, : 
               Petitioner : 
                : 
                : 
             v. : 
                : 
Workers' Compensation Appeal : 
Board (Charles and Arlene Felty and : 
Harleysville Insurance Company), : No. 2612 C.D. 2015
             Respondents : Submitted: June 24, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: July 14, 2016


       Alisha Edwards (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision to terminate compensation benefits because Claimant had fully recovered from her work-related injury. We affirm.


**I.**

       On September 4, 2012, Claimant sustained an injury while working for Charles and Arlene Felty (Employer) as a bus driver when a child assaulted her. A Notice of Temporary Compensation Payable was issued by Employer on September 19, 2012, describing Claimant's work injury as a "cervical

strain/concussion." On November 29, 2012, Employer issued a Notice of Compensation Payable (NCP) accepting as compensable an injury described as "head post concussive syndrome." Subsequently, Employer filed a Termination Petition (Petition) alleging Claimant had fully recovered from her work injury. This Petition was based upon the independent medical examination (IME) of Richard H. Bennett, M.D. (Dr. Bennett). Claimant filed an answer denying that there was a basis to terminate her benefits.

## II.

In support of its Petition, Employer offered the deposition testimony of Dr. Bennett, a physician board certified in neurology and electromyography. Dr. Bennett performed an IME of Claimant on March 14, 2013, at which time he obtained a history, reviewed medical records and diagnostic studies, and conducted a physical examination.[1]

Claimant described her work injury to Dr. Bennett as being struck or kicked in the side of the head by an unruly child as she was operating a school bus. Claimant recalled that she was able to pull the bus over to the side of the road, exit the bus and call for help. Claimant advised Dr. Bennett that after police and school officials arrived and escorted the child away, Claimant was able to drop the one remaining child off and then report back to her home base, where she completed an

---

[1] Employer also offered into evidence a copy of Dr. Bennett's March 14, 2013 IME report and a Physician's Affidavit of Recovery dated April 5, 2013.

2

accident report. Claimant was then escorted to the Pottsville Hospital emergency room for evaluation.

Claimant indicated to Dr. Bennett that her major problem involved persistent headaches. She admitted that she suffered from migraines in the past, but that her headaches after the incident were more intense and more frequent, experiencing nearly daily headaches, with some causing nausea, vomiting, photophobia and phonophobia. Dr. Bennett testified that Claimant's headaches were reportedly holocephalic, meaning they were not localized and involved the entire head, "the kinds of headaches you see with tension-type headaches or muscular traction headaches, not headaches that indicate something seriously wrong." (Reproduced Record (R.R.) at 161a.)

Dr. Bennett testified that he performed a comprehensive neurological and physical evaluation, including a motor, sensory and musculoskeletal evaluation, as well as a check of Claimant's cranial nerve function, hearing, sight and speech. Dr. Bennett's examination evidenced no cognitive issues, no cranial nerve impairment due to the effects of the accident, no loss of motor function or sensation, and normal field of vision. Dr. Bennett also performed cerebellar testing and gait assessment and found that Claimant appeared to be able to walk without any obvious problems. Dr. Bennett noted that Claimant's gait appeared to be exaggerated and that she had some degree of exaggeration or embellishment relative to her complaints of vertigo and balance issues.[2] Dr. Bennett testified that

---

[2] Dr. Bennett also indicated that a note from a Dr. Albert dated September 18, 2012, two weeks after the incident, evidenced that Claimant's heel to toe walking was normal.

Claimant had no abnormal findings on the diagnostic studies he reviewed and that her complaints varied depending on when and who she was treating with.

Based upon all of the above, Dr. Bennett opined that Claimant had fully recovered from her accepted injuries, that she did not require ongoing treatment and that she could return to work at her pre-injury job without restrictions. Moreover, Dr. Bennett opined that Claimant's evaluation was objectively normal with the exception of a prior ocular injury to her left eye, unrelated to her work injury.

On cross-examination, Dr. Bennett acknowledged that there is rarely anything objective when examining a patient for the criteria of concussions because the patient's brain imaging studies tend to be normal and there are no objective signs of headaches. Dr. Bennett went on to state that headaches are common, and that the circumstances of this particular incident did not indicate a severe traumatic brain injury as Claimant did not lose consciousness, continued to drive and was able to fill out an accident report. Upon redirect, Dr. Bennett reiterated that he did not see any medical evidence to correlate Claimant's subjective complaints to her work injury.

Employer also admitted into evidence a surveillance report from HUB Enterprises, Inc., along with a DVD containing video footage relative to Claimant's activities on November 16, 2013. The video surveillance depicted Claimant standing on her porch, smoking a cigarette, walking, carrying a sign, descending and ascending stairs from a porch, and entering a home. While the

video footage is brief, the WCJ noted that Claimant appeared to walk without any observable difficulty and without the aid of any ambulatory device or cane.

Claimant testified before the WCJ that she worked for Employer for seven years driving a school bus for special needs children. She testified that her injury was caused when she was struck or kicked in the head by one of the students on the bus. Claimant testified that she did not remember pulling the bus over to the side of the road, but she did recall taking the remaining child home after the incident. According to Claimant, she instantly had a headache, her ears were ringing, her head was spinning, and she threw up several times after arriving back at her home base. Claimant testified that her headaches have continued since the incident, but admitted that they have improved some over time. Claimant also testified that since the incident, she needs assistance with certain tasks such as making dinner, cleaning up after her children and washing her clothes. Claimant stated that she got a cane to help her walk as she had a tendency to get dizzy and fall frequently. Claimant denied having a history of migraines prior to her work injury.

While no one has taken away her license, Claimant testified that she does not drive because of her headaches, wobbliness and instability walking. Claimant does not believe she can return to her prior job as a bus driver. Claimant admitted that she has not made any attempt to return to work, despite the fact that her treating physician released her to perform modified-duty work.

Claimant also offered into evidence the deposition testimony of John B. Chawluk, M.D. (Dr. Chawluk), a physician board certified in adult neurology. Dr. Chawluk treated Claimant from October 8, 2012, through January 6, 2014. He testified that his initial diagnosis relative to Claimant's work injury was a traumatic brain injury with post-concussive symptomatology, including migrainous headaches and vertigo. Dr. Chawluk further testified that symptoms of headaches, vertigo and balance difficulty were typical for that type of head injury. According to Dr. Chawluk, he observed that at times Claimant had to hold onto the wall as she walked down the hallway; otherwise, she would lose her balance.

Dr. Chawluk confirmed that in April 2013, he released Claimant to perform "modified light duty where she did not have to operate machinery or a motor vehicle or place herself in any positions where her balance impairment could lead to catastrophe such as unprotected heights, ladders, et cetera." (R.R. at 169a.) Dr. Chawluk opined that Claimant had not fully recovered from her work injury because she was still experiencing severe headaches, was unsteady with her walking and experienced vertigo with activities.

Upon cross-examination, Dr. Chawluk admitted that Claimant's September 13, 2012 MRI of the brain and CT scan were normal, and that he was aware of no objective diagnostic scan that was abnormal. He also admitted that he did not have the opportunity to evaluate Claimant walking outside his office and that he did not view the video surveillance of Claimant.

The WCJ accepted the opinions of Dr. Bennett "as credible, logical, internally consistent, and persuasive." (R.R. at 171a.) Dr. Bennett explained that Claimant's accident did not appear that severe as she suffered no loss of consciousness, remained in control of herself, was able to pull the bus over and call for help, finished her driving assignment for the day, and completed an accident report. The IME was performed six months after the incident, which Dr. Bennett testified was beyond the point in time where vestibular problems from concussion would have been present. The WCJ also credited Dr. Bennett's statement that Claimant had some degree of exaggeration or embellishment relative to her subjective complaints of balance issues. This statement was corroborated by the surveillance video as well as a previous doctor's examination of Claimant on September 18, 2012, wherein Claimant's heel to toe walking was recorded as normal.

The WCJ rejected as less credible and persuasive, to the extent they differed from those of Dr. Bennett, the testimony and opinions of Dr. Chawluk. The WCJ found Claimant's testimony credible in part, to the extent that she described suffering a work injury and her subsequent treatment. Claimant's testimony regarding continuing to suffer a work injury and related disability after the IME performed by Dr. Bennett was rejected as not credible and not supported by the accepted credible evidence of record.

Based on all of the above, the WCJ found that Claimant had fully recovered from her work injury effective March 14, 2013, at which time she was able to return to work at her pre-injury job without restrictions. Because Employer

7

carried its burden of proof, the WCJ granted the Petition and terminated Claimant's benefits.

## III.

Claimant appealed to the Board arguing that the WCJ's decision was not reasoned. The Board held that the WCJ articulated an objective basis for his credibility determinations as required by *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003). As there was substantial competent evidence to support a termination, the Board affirmed. This appeal followed.[3]

## IV.

The sole issue on appeal is Claimant's claim that there is not substantial evidence to support the WCJ's determination that she had fully recovered from her work injury. In a workers' compensation case:

> [T]he employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his

---

[3] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

8

opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Here, Dr. Bennett testified within a reasonable degree of medical certainty that Claimant had fully recovered from her work-related injury and could return to work without restriction. Dr. Bennett further testified that the results of Claimant's physical evaluation were normal and that he found no objective criteria to support Claimant's continued complaints. The WCJ accepted the testimony and opinions of Dr. Bennett as "credible, logical, internally consistent, and persuasive." (R.R. at 171a.) Dr. Bennett's opinion that Claimant had fully recovered was supported by his objectively normal physical examination findings and his review of Claimant's records and objective diagnostic study findings, as well as the depiction of Claimant's ambulation on the surveillance video. All of this amounts to substantial evidence.

Claimant argues that the WCJ arbitrarily and capriciously disregarded the evidence of record because Dr. Chawluk's testimony offered the most substantial and credible evidence of Claimant's work injury and continuing symptoms. The WCJ did not disregard Dr. Chawluk's testimony but instead found Dr. Bennett more credible. As we have stated over and over and over again, "[t]he

9

WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab),* 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ is free to accept or reject the testimony of any witness in whole or in part, including a medical witness. *US Airways v. Workmen's Compensation Appeal Board (Johnston)*, 713 A.2d 1192, 1195 (Pa. Cmwlth. 1998). We are bound by these credibility determinations and cannot overturn them on appeal. "Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders, Inc.*, 78 A.3d at 1238. There is ample evidence in the record to support the WCJ's finding that Claimant had fully recovered from her work injury, and we discern no error in the granting of Employer's Petition.

Accordingly, the Board's order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alisha Edwards, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Charles and Arlene Felty and | : | |
| Harleysville Insurance Company), | : | |
| Respondents | : | No. 2612 C.D. 2015 |

**O R D E R**

AND NOW, this 14<u>th</u> day of <u>July</u>, 2016, the Order of the Workers' Compensation Appeal Board dated November 20, 2015, at No. A14-1208, is affirmed.

_____
DAN PELLEGRINI, Senior Judge