**Raymond MICHEL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (UNITED STATES STEEL CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 2009.

Decided Feb. 26, 2009.

644

Julie Wieczorek Fritsch, Pittsburgh, for petitioner.

Marie Jurbala Shiring, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Raymond Michel (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) terminating his workers' compensation benefits. We affirm for the reasons stated below.

 Claimant sustained a work-related injury on June 18, 2003. United States Steel Corp. (Employer) acknowledged a low back strain. Claimant was given a sedentary duty position and began receiving partial disability benefits. Employer subsequently filed a Termination Petition seeking to terminate Claimant's benefits as of September 30, 2003.[1]

Employer presented the testimony of Michael Seel, M.D., board certified in orthopedic surgery, who examined Claimant on September 30, 2003. Dr. Seel noted an MRI of the lumbar spine and a bone scan, both of which were conducted on June 21, 2003, were normal. A CT myelogram conducted September 18, 2003 revealed minimal disc bulges but symmetric nerve root sleeve filling. There was no pressure on

---

1. In a termination proceeding, the burden of proof is on the employer to establish that the claimant's work-related injury has ceased. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 705 A.2d 1290 (1997). The employer meets this burden when its medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions, and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. *Id.* at 327, 705 A.2d at 1293. *See also Gumro v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 533 Pa. 461, 626 A.2d 94 (1993) (holding that where an employer seeks to terminate benefits after the issuance of an NCP, the burden is on the employer to prove that any current disability is not related to the work injury).

the nerve roots. According to Dr. Seel, Claimant sustained a lumbar strain as a result of his work injury but was fully recovered and capable of returning to work without restrictions as of the date of his examination. He acknowledged that Claimant had degenerative changes in the lumbar spine. He opined Claimant's pain was from a non-organic, or non-anatomic, source and explained that there was no objective evidence to support Claimant's continued complaints of pain.

Claimant testified that while working for Employer, he was struck in the chest by a brace bar. He had immediate pain in his low back and groin. He explained that although he was capable of performing sedentary duty following his work injury, he was unable to do his pre-injury job. Ultimately, he was assigned to a guard shack letting tractor-trailers in and out of Employer's premises. Claimant stated that he continued to have constant pain. Claimant presented the testimony of Hong Shi, M.D., board certified in physical medicine and rehabilitation, who diagnosed him with left sacroiliac joint dysfunction and chronic low back pain. He concluded Claimant was not fully recovered from his work-related injury of June 18, 2003.

By a decision circulated January 5, 2005, the WCJ terminated Claimant's benefits effective September 30, 2003. Claimant appealed this decision to the Board. Moreover, he requested a rehearing before the WCJ in order to present after-acquired evidence.

The Board treated Claimant's request for a rehearing as a request for a remand. It vacated the WCJ's order and remanded the matter for submission of additional evidence. Specifically, the Board indicated that Claimant could present evidence from Peter Gerszten, M.D., who performed surgery on July 5, 2005, six months after the WCJ's decision. The Board further stated that Employer should be permitted to present rebuttal evidence to any evidence submitted by Claimant. The Board instructed that the WCJ, after receiving additional evidence, should issue a new decision based on all evidence contained in the record.

On remand, Claimant testified that he underwent an intradiscal electrothermy procedure on January 18, 2005. He explained that this procedure provided him with great relief but after several months, his symptoms returned. He underwent a spinal fusion on July 5, 2005. The spinal fusion provided relief to pain he was experiencing in his groin, but he stated he continues to have pain in his low back.

Claimant presented the testimony of Dr. Gerszten, board certified in neurological surgery, who first saw him on November 19, 2004. He explained that Claimant presented with pain in his low back and intermittent left groin pain. He explained that a discogram that Claimant underwent on June 14, 2004 was positive at the L4–5 and the L5–S1 levels and showed annulus tears. Consequently, Dr. Gerszten ordered an intradiscal electrothermy. According to Dr. Gerszten, Claimant exhibited marked improvement following the procedure. Claimant's pain returned, however, and a spinal fusion was eventually performed. Thereafter, Claimant's groin pain resolved. Claimant's back pain improved, but was still present. Dr. Gerszten opined that Claimant's work injury of June 18, 2003 led to the annular tears at L4–5 and L5–S1. He did not believe Claimant was fully-recovered from the work injury and explained Claimant needed continued treatment.[2]

---

2. Claimant further presented the testimony of Louis Olegario, M.D., board certified in physi-

cal medicine and rehabilitation, who diagnosed Claimant with lumbar facet atrophy,

The following discussion took place during Dr. Gerszten's deposition:

A....Dr. Spiro ordered a test called a provocative discogram, and this is a very important test because it is a blinded test. It is a test that is performed here at this institution in Pittsburgh in which, with the patient is awake and lying on their stomach, tiny needles are inserted into the disk spaces of the spine, and this is performed by an interventional radiologist, and a small amount of fluid and contrast material are injected into the spaces.

In order for the test to be positive, the patient's pain must be reproduced in a concordant fashion. Meaning it must reproduce his typical pain, not just any pain; and then there also has to be normal levels that when you inject an amount of fluid, they do not cause pain.

Then after that portion of the test, the patient undergoes a CAT scan that shows a tear of the annulus. Meaning the outer strong layer of the disk, and he indeed had these tears that were the underlying etiology of his pain.

In Mr. Michel's case, this test was performed on June 15th, 2004, and it was markedly positive at the L4–5 and L5–S1 levels in that it reproduced his pain precisely including the groin pain, and he-at a normal level, such as L3–4, it didn't cause any pain, and with a CAT scan, it showed that there were clear tears.

. . .

Q. And what does that mean that it's a blinded study?

A That is the most important part of the test is that it's impossible to fake the study because the needles are inserted

into the various levels of the disk, and then the doctor is putting a little bit of fluid in, but the patient lying on his stomach has absolutely no idea which needle is being injected. So, it would be impossible to fake it because you wouldn't know if an L3–4 or L2–3 was being injected, and those of course would correspond to the CAT scans that it would be normal.

Reproduced Record (R.R.) at 77a–79a.

Employer again presented the testimony of Dr. Seel who saw Claimant for a follow-up examination on March 14, 2007. Following the examination and a review of updated medical records, Dr. Seel reiterated that Claimant sustained a lumbar strain as a result of his work injury and that he was fully recovered from that injury as of September 30, 2003. He acknowledged that Claimant underwent the intradiscal electrothermy procedure and a lumbar spine fusion in January and July of 2005 respectively, but he did not believe these procedures were necessitated by the work injury. Dr. Seel conceded the procedures provided momentary relief, but he explained that it appeared that Claimant's overall condition had gotten worse since his first examination. He indicated that these factors support his opinion that Claimant's current complaints are from a non-organic source. Dr. Seel again found no objective findings to support Claimant's complaints of pain. He agreed that Claimant should be limited to a sedentary position, but these restrictions were not based on his work injury.

On cross-examination, the following dialogue took place:

Q. In regard to the discogram, the one that I'm looking at is dated 6/15/04. It

bilateral sacroiliac dysfunction, and myofascial pain syndrome. He opined these injuries were directly related to the work incident of

June 18, 2003 and that Claimant was not fully recovered from these injuries.

indicates that the pain was described as concordant.

What's your understanding of what that would mean when the pain is concordant?

A. Sure. Concordant pain is intended to mean in this case that stimulation of the disc reproduced the type of pain that the individual sustains.

One should note that the use of discograms and the interpretation of discograms is felt to be controversial. Some practitioners believe strongly in them and others do not.

Q. Then I take it from your comment that you are one that does not believe in discograms?

A. Not necessarily. I believe that a discogram can be and should be considered as part of the overall clinical picture.

Q. Do you consider it as objective evidence?

A. No. It is clearly a subjective test. It is clearly subjective because the individual is the one who states whether there is an increase or decrease in pain and who states whether or not there is concordant pain. So it is not an objective test. It is purely a subjective test.

Q. However, would you agree that the test is blinded, and they are not aware of what segments are being tested?

A. It depends on the technique that's used for the discogram, but in general, that should be the way it is performed, yes.

Q. You have no reason to believe that this test was performed other than in the manner it was supposed to be performed?

A. What I should say is I have no idea whether it was performed blinded or not blinded.

Q. But properly done, they are blinded?

A. Correct.

R.R. at 201a–203a.

■ The WCJ issued a new decision on December 19, 2007 wherein he again concluded that Employer established Claimant was fully recovered from his work-related injury as of September 30, 2003. Further, he found that any problems with Claimant's back and any resultant pain were attributable to a non-work-related cause. The WCJ again credited the testimony of Dr. Seel. In so doing, the WCJ referenced that Dr. Seel's initial examination was performed shortly after Claimant's work injury and that at that time, Dr. Seel could not find any objective evidence to support Claimant's complaints of pain. He further noted that Dr. Seel conducted several distractive maneuvers while examining Claimant resulting in an appearance that Claimant's pain complaints originated from a non-anatomic source. The WCJ rejected the testimony of Claimant's medical experts. Relevant to this appeal, the WCJ explained that although Dr. Gerszten opined Claimant's work injury resulted in annular tears at L4–5 and L5–S1 and caused the pain that he was treating, the procedures he performed, the intradiscal electrothermy and the spinal fusion, have not resulted in any significant improvement in Claimant's symptomatology. Therefore, the WCJ concluded this fact supported Dr. Seel's opinion that Claimant's pain was from a non-organic source. The WCJ granted Employer's Termination Petition. The Board affirmed. This appeal followed.[3]

---

**3.** Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Sysco Food Servs. of Phila. v. Workers' Compensation Appeal*

■ Claimant argues on appeal that Dr. Seel was incorrect in stating that no objective test supported his continued complaints of pain. He contends that a discogram is an objective test. Therefore, he asserts the testimony of Dr. Seel was incompetent and incapable of supporting a termination of benefits. In light of this argument, Claimant further contends that the WCJ failed to issue a reasoned decision inasmuch as the WCJ credited Dr. Seel's testimony. In addressing these arguments, we reiterate that an employer is entitled to a termination of benefits when its medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions, and that there are no objective medical findings to substantiate claims of pain or connect them to the work injury. *Udvari.*

■ The term "objective" is defined as "[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions." Black's Law Dictionary 1101 (7th ed.1999). In turn, the term "subjective" is defined as "[b]ased on an individual's perceptions, feelings, or intentions, as opposed to externally verifiable phenomena." *Id.* at 1438. Of further relevance to this appeal, we point out that a medical expert's opinion is rendered incompetent if it is based on inaccurate or false information. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.),* 926 A.2d 997 (Pa.Cmwlth.2007).

In support of his argument, Claimant cites *Indian Creek Supply v. Workers' Compensation Appeal Board (Anderson),* 729 A.2d 157 (Pa.Cmwlth.1999), wherein this Court held that when evidence of an injury not covered by the NCP is present in the record, an employer must nonetheless present evidence establishing that this injury is unrelated to the accepted work injury in order to succeed on a termination petition. In *Indian Creek,* the employer filed a termination petition seeking to end its liability for a lumbosacral strain sustained by the claimant. Evidence was submitted by both parties indicating that the claimant also had a central herniated disc at the L5–S1 level. Both the employer and the claimant's medical experts saw evidence of this herniation in a discogram and post-discogram CT scan and both experts attributed the condition to the claimant's work injury although the employer's expert did so reluctantly. Indeed, the employer's witness, on direct, opined that the claimant was fully recovered from his work-related lumbosacral strain and that the claimant did not sustain a herniation as a result of his work injury. It was only on cross-examination that he acknowledged that following his review of the discogram that he believed the claimant had a disc herniation and that it was related to his work activities.

The WCJ granted the employer's termination petition. He indicated that there was no objective evidence to correlate a disc herniation to the claimant's work-related injury. The Board reversed. This Court pointed out that the employer's expert acknowledged on cross-examination that upon having reviewed the discogram, it appeared the claimant had a disc-herniation at the L5–S1 level that was attributable to his work injury. As this testimony contradicted the testimony he gave on direct, this Court found the employer's expert was equivocal in his opinion of full recovery and could not support employer's burden of proof. In dicta, we stated that "the WCJ's finding that [the][c]laimant's diagnostic records did not reveal any ob-

*Board (Sebastiano),* 940 A.2d 1270 (Pa. Cmwlth.2008).

jective evidence to correlate a diagnosis of a disc herniation is not supported by substantial evidence because the discogram and post-discogram reports do, in fact, reveal a central herniated disc at the L5–S1 level." *Id.* at 160, fn. 2.

Claimant further directs us to numerous cases issued in our sister states for their persuasive value although they are not controlling. The most helpful case cited by Claimant is *Smith v. County Mkt./Southeast Foods*, 73 Ark.App. 333, 44 S.W.3d 737 (2001) wherein the Arkansas Court of Appeals held that a discogram produces objective findings for the purpose of determining compensability of an injury under the Arkansas Workers' Compensation Act.[4] The employee underwent a discogram in that case that was performed by Dr. Peavy. Dr. Peavy's report was submitted into the record wherein he indicated that a discogram involves injecting a dye into the disc spaces, and observing both the patient's pain response to the different injections at each level and observing the dispersion pattern of the dye on X-ray and CT films.[5] Dr. Peavy noted that some of the patient's responses are subjective and that the diagnostic test is "somewhat controversial." *Smith*, 44 S.W.3d at 739. Nonetheless, he explained that the patient's pain response at L4–L5 was consistent with fissuring observed on the accompanying CT scan.

The employee, in *Smith*, further submitted a letter from a Dr. Greenspan whom indicated that the discogram administered was composed of three parts and that two parts of the test are objective. Dr. Greenspan stated that the "post-injection plain films" documented "one markedly positive disc and four distinctly negative control discs." *Id.* Dr. Greenspan opined that the second part, the objective post-injection CT scan films, document the same findings. He added the third portion of the test, based on the patient's pain response, although subjective, is consistent with the first two portions.

In opposition to the statements of Drs. Peavy and Greenspan, a Dr. Contreras explained in deposition that he has ordered one discogram in ten years and that he does not believe they are reliable. Moreover, he opined that he believes a healthy disc will exhibit the same changes on discogram as diseased discs.

The Arkansas Court of Appeals held that radiographic images of the dye, once injected into the spine, are not subject to a patient's manipulation. It added that results of X-ray, CT scan, MRI, and other radiographic and computerized diagnostic studies are "objective findings" for purposes of the Arkansas Workers' Compensation Act. Therefore, it found that X-ray and CT scan of the spine, with dye contrast, cannot be rendered meaningless in a workers' compensation context just because a patient's pain response during the injection of the dye is taken into account.[6] *Id.* at 740. Nonetheless, the Court recognized that reasonable minds could disagree

---

4. Four other cases cited by Claimant are unreported. Another case, *Havlin v. Wabash Int'l*, 787 N.E.2d 379 (Ind.Ct.App.2003), contains no definitive holding concerning whether discograms are an objective or subjective test. It is only in *quoting* Indiana's Workers' Compensation Board's findings of fact that the Court indicates "there were three objective imaging studies, including a CT discogram that revealed isolated disease at the L4–5 level." *Id.* at 381.

5. Claimant's dye dispersion in the present matter was not observed by X-ray, only by CAT scan.

6. It should be noted that the *Smith* case indicates that Arkansas law requires medical evidence supported by objective findings in order for a claimant to continue receiving compensation. *Smith*, 44 S.W.3d at 738.

about the significance of objective findings. *Id.* Moreover, it indicated that while Dr. Contreras' opinion concerning the validity of a discogram may be believed, one cannot conclude that the Dr. Peavy's visualization of a fissure is not objective in nature. *Id.*

In opposition, Employer references *Stewart v. Batson Lumber Co., Inc.,* 283 So.2d 541 (La.App.1973), wherein the claimant was seeking continued benefits for a back injury. A question arose as to whether he had three herniated discs. The Louisiana Court of Appeals noted that the medical evidence submitted concerned the merits and/or demerits of the use of discography as an aid in determining whether an individual has sustained a herniated disc. It added that it is evident that members of the medical profession are divided in their opinion as to the merits of this procedure. The Court cited the testimony of a Dr. Flynn who stated:

> Lumbar discography as a test by neurosurgeons in general and by myself in particular has largely been abandoned in recent years as a diagnostic tool in the evaluation of suspected lumbar disc ruptures, the reason being that an abnormal disc pattern on x-ray when the disc is injected does not necessarily mean a clinically significant herniation or one that is causing discomfort. The lumbar discogram is much different from a test such as a lumbar myelogram in that interpretation of the discogram is largely of a subjective nature and depends on the patient's reaction to the dye injection. In other words, when the dye is injected in the disc the patient is asked whether or not the injection reproduces

his discomfort. And this is of prime consideration. The x-ray picture made of the injected disc is of secondary importance. And in a patient who has some problems that would make him an unreliable reporting witness or patient, then the discogram itself would be unreliable.

*Id.* at 546.

Ultimately, Dr. Flynn concluded the Claimant did not have a disk herniation. The Court found that the case was nothing more than one that required an evaluation of conflicting testimony. Inasmuch as the trial judge found the claimant did not meet his burden, the Court affirmed.[7]

Our review of the testimony presented in this case, this Court's decision in *Indian Creek,* and the opinions of our sister states lead us to simply conclude that a discogram is a diagnostic test that has both objective and subjective components. Dr. Gerszten succinctly explained how a discogram is performed; *i.e.* needles are injected into various areas of the back whereupon dye is also injected. The patient reports complaints of pain and those complaints of pain are correlated with the results of a CT scan taken once the fluid is released. Both Drs. Gerszten and Dr. Seel opined that optimal results are obtained when the patient is "blinded." Certainly, observing the dye dispersion patterns on the CT scan is not subject to a patient's perceptions or feelings. Rather, the dispersions are independently observed. Nonetheless, even where the patient is properly "blinded," the portion of the test where the claimant is injected with the needles must be found, at least in

---

7. In a case not involving a claim for workers' compensation benefits, the Court of Appeals in Louisiana stated "based upon the testimony of the neurosurgeons the evidence is clear that a discogram is a controversial and questionable procedure because it relies upon the subjective reaction of a patient to pressure applied to the spine in order to determine whether pain is produced." *Dupre v. Insurance Co. of North Amer.,* 646 So.2d 461 (La. App.1994).

part, subjective. Indeed, as indicated by Dr. Gerszten, the patient must state when he is in pain. Moreover, he must communicate when the pain most closely mimics his normal symptoms. These requirements necessitate that a patient communicate his perceptions and feelings, the definition of the term "subjective."

■■■ Unlike the law in Arkansas, it is not necessarily the case that a claimant must present objective evidence to support his complaints of pain in order to continue to receive benefits under the Act. In *Udvari*, this Court stated that a lack of an objective basis for pain does not, in and of itself, mean that disability has ended and termination is warranted. *Udvari*, 550 Pa. at 327, 705 A.2d at 1293, fn. 2. *See also JAB Enters., Inc. v. Workmen's Compensation Appeal Board (Haehn)*, 79 Pa. Cmwlth.638, 470 A.2d 210 (1984)(holding an employee's complaints of severe pain, even without evidence of an anatomical cause, is sufficient to support a finding of continued disability, if credited by the WCJ). Thus, the issue of whether a discogram is a subjective or an objective test is not determinative as to whether a claimant is entitled to benefits. Therefore, in finding a discogram to be a partially subjective test, we are not rendering it useless regarding evaluation of an individual's claim to workers' compensation benefits under Pennsylvania law as may be the case in other states. Nonetheless, even if a discogram were to be considered solely an objective test, we similarly point out as did the Arkansas Court of Appeals, that reasonable minds could disagree about the significance of objective findings. *Smith.*

A dispute over the significance of the discogram is what is in the record before us. Dr. Gerszten attributed a great deal of weight to the discogram. Dr. Seel did not. We acknowledge that we believe the discogram is, in part, an objective test, and that Dr. Seel testified only that it was a subjective test. Nonetheless, in explaining why he believed the test was subjective, he explained that it is the patient who states when he is in pain and when the pain is concordant with the symptoms of his work injury. This is the portion of the discogram that we agree to be the subjective part of the test. While Claimant emphasizes the fact that his test was a blind test, Dr. Seel agreed that if done properly, the test *should* be a blind test. Dr. Seel made no distinction that the test would be subjective if not "blinded" and objective if "blinded." Moreover, we reiterate that even if blinded, Claimant must give descriptions of his pain upon insertion of the varying needles and identify when the pain mimics his work-related symptoms. This information is based on his perceptions. We acknowledge this information is correlated with the results of the CT scan and that it is for this reason that Dr. Gerszten assigns great weight to the test. The complaints of pain, however, are still based only on what Claimant stated he was experiencing.

■■■ We cannot say Dr. Seel's opinion is based on any inaccurate or false information. Consequently, it is not incompetent and, thus, is capable of supporting a termination of benefits. *DeGraw.* Just as in *Stewart*, this case ultimately comes down to the WCJ resolving a factual issue and resolving conflicts in the evidence. The WCJ credited Dr. Seel's testimony that Claimant was fully recovered from his work-related lumbar strain, that he could return to work without restriction, and that there were no objective findings to support his continued complaints of pain. The WCJ is the final arbiter of witness credibility and the weight to be accorded evidence and may accept or reject the testimony of any witness in whole

or in part.[8] *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Moreover, the WCJ provided objective reasons for crediting Dr. Seel's testimony and rejecting that of Dr. Gerszten. Consequently, the WCJ issued a reasoned decision. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transp.)*, 574 Pa.61, 828 A.2d 1043 (2003)(holding that when witnesses appear via deposition, some articulation of an actual objective basis for the credibility determinations must be offered by the WCJ in order to issue a reasoned decision).[9]

The WCJ's determination to terminate Claimant's benefits is supported by sub-

stantial competent evidence. *Udvari.* Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 26th day of February, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

**8.** Claimant also argues that Dr. Seel's conclusion that the various procedures he underwent failed to improve his pain is incorrect. He contends that the evidence shows that there were periods of improvement, although he concedes that both the intradiscal electrothermy and the spinal fusion have not permanently and completely resolved his complaints of pain. As indicated above, Dr. Seel indicated that there were periods where Claimant's condition improved. Overall, however, Dr. Seel opined Claimant's condition deteriorated. Claimant essentially wants this Court to reweigh Dr. Seel's testimony on this issue. This we will not do. *See Lehigh County Vo–Tech Sch. v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995)(holding the appellate role in a workers' compensation case does not in-

clude the reweighing of evidence or reviewing the credibility of the witnesses).

**9.** In arguing that Dr. Seel inappropriately said there was no objective evidence to support Claimant's continued complaints of pain, Claimant makes reference that Dr. Seel's testimony was equivocal. Medical testimony is equivocal if, after a review of a medical expert's entire testimony, it is found to be merely based on possibilities. *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette)*, 954 A.2d 726 (Pa.Cmwlth.2008). Claimant does not point to any place in the record were Dr. Seel was less than positive concerning his opinions. Therefore, we will not address this issue any further.