# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Leaper, : 
                    Petitioner : 
         : 
           v. : No. 1156 C.D. 2018
         : Submitted: December 14, 2018
Workers' Compensation Appeal : 
Board (St. Mary Medical Center), : 
             Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


<u>OPINION NOT REPORTED</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: April 5, 2019**


Jason Leaper (Claimant) petitions for review of a July 20, 2018 Order of the Workers' Compensation Appeal Board (Board), which affirmed the Decision of the Workers' Compensation Judge (WCJ) granting the Termination Petition of St. Mary Medical Center (Employer). Claimant argues that Employer failed to meet its burden of proof showing its entitlement to termination of his benefits. Employer, however, presented medical expert opinion evidence showing that Claimant had fully recovered from his work injury and could return to work without restrictions, and that there were no objective medical findings to substantiate Claimant's continued complaints of pain in his right hip or connect them to his work injury. The

WCJ credited Employer's medical evidence and discredited Claimant's testimony of continued complaints of pain. Since Employer presented sufficient evidence to sustain its burden of proof and we may not disturb the WCJ's determinations on credibility, we must affirm the Board's Order affirming the WCJ's termination of Claimant's benefits.

## I. Factual and Procedural Background

On March 19, 2014, while Claimant was employed as a terminal cleaner for Employer and was cleaning an operating room, he felt a pop in his right hip and fell to the floor. Claimant, who had an existing prosthetic hip implanted because of a staphylococcus infection 8 years earlier when he was 33 years old, was taken to the emergency room. Employer filed a Notice of Temporary Compensation Payable on April 16, 2014, identifying Claimant's injury as a right hip strain. On May 28, 2014, Employer filed a Notice Stopping Temporary Compensation Payable and Notice of Workers' Compensation Denial on the basis Claimant did not suffer a work-related injury. Claimant then filed a Claim Petition. Meanwhile, following repeated partial dislocations of the right hip, Claimant, on October 15, 2014, had a second right hip replacement. Following a hearing before a WCJ on the Claim Petition, the WCJ granted the Petition, finding that Claimant suffered a work-related injury in the nature of a "revision right hip replacement of that socket or an acetabular revision to reposition that," as well as "an enhanced repair of the soft tissue behind the hip in order to optimize the stability of [Claimant's] hip." (WCJ Decision, Oct. 1, 2015, Conclusion of Law ¶ 2.) The WCJ further found that the injury rendered Claimant temporarily totally disabled from the date of injury. The Board affirmed the WCJ's Decision granting the Claim Petition.

### A. Termination Petition and the WCJ Hearing

On November 18, 2016, Employer filed its Termination Petition, alleging that, as of October 6, 2016, Claimant had fully recovered from his work injury based upon an independent medical examination performed by Stuart Gordon, M.D. The matter proceeded to a hearing before the WCJ where the following evidence was adduced.

In support of the Termination Petition, Employer presented the deposition testimony of Claimant and Dr. Gordon. Claimant testified at his deposition that on December 7, 2016, following the filing of the Termination Petition, Claimant first saw Bradley A. Fink, D.O. Dr. Fink ordered x-rays of Claimant's right hip, which were done about two weeks before Claimant's deposition. Claimant had not since seen Dr. Fink and was waiting to hear from him regarding the results of the x-rays. Prior to seeing Dr. Fink, Claimant had not treated with a doctor, he believed, since late 2015. Following the surgery, Claimant testified, the hip was stable, but he had "nuisance pain," and, over time, the pain had "gotten worse," radiating down Claimant's groin and into his right leg, and limiting what he could do. (Reproduced Record (R.R.) at 29a, 41a-42a.) This contrasted with Claimant's first hip replacement where, while "it took a long time of rehab and . . . a few years to finally adjust," he had no pain. (*Id.* at 40a-41a.) For example, now, after the second hip replacement, according to Claimant, "[s]imple things," such as tying his shoes or putting on pants, crouching or picking up something off the ground, were painful. (*Id.* at 29a.) Claimant testified that he was not taking any narcotic medication for the pain. Claimant's primary physician had prescribed Claimant ibuprofen 800mg for another condition, but Claimant did not take it at all because of the cost of the medication. Following Claimant's injury, he moved into his mother's house and has helped her with cooking and cleaning since she works 12-hour days at her

employment. However, Claimant testified, he was unable, for example, to help clean the floors or assist his father in painting the house.

Claimant explained that when he was employed as a terminal cleaner, he worked as part of a four-person team, cleaning operating rooms from the ceiling to the floors. This required him to climb up ladders, crawl underneath tables, and use heavy machines to clean the floor. Claimant testified that "[t]here [was] no way [he] c[ould] do that job" now. (*Id.* at 34a.) "[S]ince all this started," Claimant testified, he had gained "[e]asily 100 pounds," which he attributed to the pain in his hip, which rendered him unable to be as active as he had been in the past. (*Id.* at 34a-35a.) He was "depressed," and the way he dealt with depression was to eat. (*Id.* at 35a.) Claimant previously was diagnosed with bipolar disorder, for which he saw a therapist and a psychiatrist and had been taking anti-depressant and anti-anxiety medication for over a decade. While Claimant did not believe he could return to his pre-injury position, he thought he could perform a lighter duty job, such as sitting and answering phones. Claimant, however, had not searched for another job.

Claimant also testified live before the WCJ, stating that there had been no change in his condition since his deposition. Claimant noted that before his work injury, he weighed "a steady 255" pounds, "could ride a bicycle" and "was very active," but now he weighed approximately 350 pounds.[1] (*Id.* at 13a.) Claimant was seeing Dr. Fink every two months, with Dr. Fink trying to determine the origin of Claimant's pain. Claimant was not undergoing any therapy, had not received any injections, and was taking 800 mg of ibuprofen 3 times a day along with some other pain medication, the name of which Claimant could not remember. Claimant noted that he has diabetes and takes medication to regulate it. Since Claimant's deposition,

---

[1] Claimant's medical records showed that as of January 8, 2015, he weighed 298 pounds. (R.R. at 88a.)

4

he testified, he had not looked for work because he did not "know exactly where [he] st[ood] or what [was] going to happen." (*Id.* at 16a-17a.) Claimant stated he was fearful of reinjuring his hip, and he did not want to have his third hip replacement at only 45 years of age.

Dr. Gordon testified at his deposition that he is a board-certified orthopedic surgeon who subspecializes in hip and knee replacements. Reviewing Claimant's medical history, Dr. Gordon noted that as a result of Claimant's work injury, Claimant's hip popped out and had to be relocated in the emergency room. Thereafter, Dr. Gordon testified, Claimant suffered several partial dislocations, leading Claimant's physician, Dr. Charles Nelson, to perform a revision procedure and repair soft tissue. The surgery, Dr. Gordon testified, was "well-done." (*Id.* at 105a.) Dr. Gordon testified that following Claimant's surgery, Claimant needed "no further specific care or treatment to his hip other than the standard follow up," and Claimant did not have much follow up with Dr. Nelson because Claimant "actually was doing quite well." (*Id.* at 98a.) In fact, there was almost a year where Claimant had no medical treatment for his right hip.

On October 6, 2016, Dr. Gordon examined Claimant. Dr. Gordon testified that Claimant was 6' 3" and 285 pounds, which qualified him as obese. Claimant reported to Dr. Gordon that he had "some soreness and tenderness in his hip from time to time, but had no further instability episodes." (*Id.*) Claimant did not mention, Dr. Gordon testified, that the pain was radiating down his right leg. These subjective complaints of Claimant, Dr. Gordon testified, were Claimant's "major issue." (*Id.* at 100a.) In the course of Dr. Gordon's physical examination of Claimant, Dr. Gordon found that Claimant's hip was "very stable," Claimant "had no numbness or tingling or any neurologic complication," the soft tissue around the

5

hip was normal, "the hip was comfortable in several motions," the hip abductors "were strong," and Claimant had "a normal gait." (*Id.* at 99a-100a.) Thus, Dr. Gordon testified, none of the testing he performed on Claimant supported Claimant's subjective complaints of pain. Dr. Gordon concluded, to a reasonable degree of medical certainty, based on his review of Claimant's medical history and his physical examination of Claimant, that Claimant had fully recovered from his work injury and needed no further treatment. Dr. Gordon, who was familiar with Claimant's pre-injury position, believed that Claimant could return to work as a terminal cleaner. On cross examination, when asked to what Dr. Gordon would attribute Claimant's subjective complaints of pain, Dr. Gordon answered Claimant's 100-pound weight gain. However, on redirect, Dr. Gordon testified that Claimant's weight gain was not related to his hip surgery. Following a hip replacement, Dr. Gordon explained, weight gain was atypical because "[o]nce the hip [was] fixed, [the patient was] ready to rock and roll." (*Id.* at 115a.) Thus, following hip surgery, Dr. Gordon stated, outside of deep squats, running, or "extreme sporting activities," such as water skiing or mogul skiing, patients were not restricted in the type of exercise they could do.

Claimant, on his behalf, presented the deposition testimony of Dr. Fink. A board-certified orthopedic surgeon, Dr. Fink testified that he first examined Claimant on December 7, 2016. Claimant complained of pain in his right hip, groin, and buttock, which restricted his range of motion. Dr. Fink's examination of Claimant revealed that "[h]e had painful range of motion." (*Id.* at 55a.) Dr. Fink ordered x-rays of Claimant's right hip and a bone scan. The latter was negative, while the former showed the prosthesis and its alignment, which was not abnormal when compared to Claimant's December 2014 x-ray. Dr. Fink noted that he had

seen Claimant three times, the last time on April 21, 2017, a few days before Dr. Fink's deposition, during which Dr. Fink ordered a hip aspiration and blood test to rule out metabolic and infectious causes for Claimant's pain. Dr. Fink did not know when Claimant scheduled those tests. Dr. Fink diagnosed Claimant with "chronic right hip pain, status post work-related hip dislocation, and subsequent revision hip replacement." (*Id.* at 57a.) Dr. Fink did not believe that Claimant had fully recovered from his work injury and placed restrictions on Claimant's ability to work, indicating, as shown in a functional capacity questionnaire Dr. Fink completed, that Claimant should walk less than 2 hours a day, sit less than 6 hours a day, rarely lift more than 20 pounds, and avoid stooping, bending, crouching, and squatting, while only occasionally climbing a ladder or stairs. On cross examination, Dr. Fink acknowledged that he had not reviewed Claimant's medical records prior to 2014, including those of Dr. Nelson. When shown a note authored by Dr. Nelson dated January 8, 2015, Dr. Fink acknowledged that the note indicated Claimant said his pain was a 3 out of 10.

## B. WCJ's Decision

The WCJ granted the Termination Petition, crediting Dr. Gordon and discrediting Dr. Fink and Claimant "as to [Claimant's] alleged ongoing pain in the hip." (WCJ Decision, Oct. 11, 2017, Findings of Fact (FOF) ¶¶ 7-9.) The WCJ explained that he credited the testimony of Dr. Gordon because of his "thorough examination of Claimant and review of the medical records." (*Id.* ¶ 7.) Dr. Fink, in contrast, the WCJ found, was not credible because he did not review all of Claimant's medical records, including those of Dr. Nelson indicating that on January 8, 2015, Claimant said his pain was only a 3 out of 10. (*Id.* ¶¶ 5, 8.) Given Dr.

7

Gordon's "review of more extensive records" than Dr. Fink, the WCJ credited Dr. Gordon over Dr. Fink and, thus, "accepted as fact" Dr. Gordon's opinion that Claimant had fully recovered. (*Id.* ¶ 7.) As for Claimant, the WCJ stated that Claimant was not credible as to the pain in his hip based on the history Claimant provided to Dr. Nelson in prior medical records and Claimant's lack of medical treatment, particularly in not treating for over a year until he saw Dr. Fink in December 2016, which was done on the referral of Claimant's attorney, the WCJ noted. (*Id.* ¶ 9.) Thus, the WCJ rejected Claimant's argument that his weight gain was the cause of the pain and discomfort in his hip and that the pain was causally related to the hip surgery Claimant underwent following his work injury. (*Id.*) Therefore, the WCJ concluded, Claimant had fully recovered from his work injury as of October 6, 2016, and was able to return to his pre-injury position. (*Id.* ¶ 10.) Accordingly, the WCJ granted the Termination Petition as of October 6, 2016.

Claimant appealed to the Board.

### C.    The Board's Order

The Board affirmed the WCJ's Decision. (Board Op. at 6.) The Board rejected Claimant's argument that Employer did not meet its burden of proving that Claimant had fully recovered. (*Id.* at 2.) The Board noted that the WCJ had credited Dr. Gordon's testimony and discredited the testimony of Dr. Fink and Claimant. (*Id.* at 4.) Dr. Gordon, the Board stated, unequivocally testified that Claimant had fully recovered and could return to work without restrictions. (*Id.* at 5.) The Board recounted that Dr. Gordon found that Claimant's subjective complaints of pain were not related to his work injury and that it was atypical for patients who had undergone a hip replacement to experience a weight gain. (*Id.*) The Board rejected Claimant's

8

argument that Employer had to establish the cause of Claimant's hip pain, stating that it was unnecessary "for Dr. Gordon to speculate as to what, other than the work injury, was the cause of Claimant's subjective complaints." (*Id.*) Since the WCJ's resolution of this credibility contest and the conflicts in the evidence was insulated from review by the Board, and since Dr. Gordon's credited testimony constituted substantial competent evidence supporting termination of Claimant's benefits, the Board affirmed the WCJ's Decision granting the Termination Petition. (*Id.* at 4-5.)

## II. Discussion

### A. Arguments on Appeal

On appeal,[2] Claimant argues that Employer did not meet its burden of proof so as to warrant termination of his benefits because Employer did not present unequivocal evidence that Claimant's complaints of pain in his right hip were unrelated to his work injury. Claimant contends that it was undisputed that he had gained 100 pounds since his surgery and was complaining of pain in his right hip. Claimant attributed this weight gain to his immobility following surgery, and, because of the weight gain, Claimant was unable to do the things he had done prior to his work injury, such as riding a bicycle. Claimant asserts that Dr. Gordon did not credibly refute Claimant's testimony that his weight gain was attributable to his immobility following surgery. Instead, Dr. Gordon offered only conclusory testimony that a patient typically does not gain weight following hip replacement surgery and that once the hip was fixed, the patient was ready "to rock and roll."

---

[2] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

(Claimant's Brief (Br.) at 15 (quoting R.R at 115a).) Dr. Gordon's testimony, Claimant argues, was not competent evidence. In order to be competent evidence, Claimant asserts, Dr. Gordon had to provide a basis for his opinion that Claimant's post-surgical weight gain was not related to his work injury, but Dr. Gordon did not. Dr. Fink, in contrast, Claimant argues, testified that Claimant's continuing complaints of pain are attributable to the work injury, and Dr. Fink's "testimony [i]s more credible than that of Dr. Gordon[]" because Dr. Fink examined Claimant on more than one occasion, after Dr. Gordon had examined Claimant, and Dr. Fink was Claimant's treating physician. (*Id.* at 16.) At the very least, Claimant argues, since Dr. Gordon acknowledged Claimant's post-surgery weight gain and complaints of pain, the WCJ should have determined whether the weight gain was due to Claimant's surgery and lack of mobility, which would have shown a causal relationship between the work injury and Claimant's ongoing complaints. If Claimant's complaints were not related to his work injury, then, as the law requires, the WCJ should have determined the cause of Claimant's pain. Therefore, Claimant asserts, the Board's Order must be reversed or, at the very least, the matter must be remanded for a new determination on the cause of Claimant's complaints.

Employer argues that while Claimant has tried to reframe the issue as one of a failure of proof, the fact of the matter is that Claimant is attempting to challenge the WCJ's credibility determinations. Dr. Gordon's unequivocal testimony was, Employer asserts, that within a reasonable degree of medical certainty, Claimant is fully recovered, can return to work without restrictions, and there are no objective medical findings to substantiate Claimant's subjective complaints of pain or connect those complaints to the work injury. Since the WCJ credited Dr. Gordon's testimony, Employer argues that it met its burden of proof. Further, given this proof,

10

Employer did not have to establish the cause of Claimant's subjective complaints of pain. In any case, Employer contends, the WCJ specifically rejected Claimant's testimony regarding his subjective complaints of pain, finding them not credible because Claimant reported pain of only a 3 out of 10 on January 8, 2015, and did not seek any medical treatment for a lengthy period of time and only after Employer filed the Termination Petition. The WCJ's decision to discredit Claimant is supported by the record, Employer argues, and, therefore, this Court has no basis upon which to reverse these credibility determinations. Where, as here, the WCJ did not credit Claimant's subjective complaints of pain, and Employer provided unequivocal medical expert evidence from Dr. Gordon, which the WCJ did credit, termination of benefits was proper. Therefore, Employer asserts, the Board's Order must be affirmed.

### B. Analysis

On a petition to terminate benefits, the employer bears the burden of "establish[ing] that all disability related to a compensable work injury has ceased." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1291 (Pa. 1997). Where a claimant complains of continued pain, the employer meets this burden when the employer offers unequivocal expert medical testimony that in the expert's "opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings **which either substantiate the claims of pain or connect them to the work injury**." *Id.* at 1293 (emphasis added).

The WCJ has the exclusive province over questions of credibility and evidentiary weight "and may accept or reject the testimony of any witness in whole

or in part." *Michel v. Workers' Comp. Appeal Bd. (U.S. Steel Corp.)*, 966 A.2d 643, 652-53 (Pa. Cmwlth. 2009). We will not reweigh the evidence or substitute our credibility determinations for those of the WCJ. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001). "[W]hether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ" to determine. *Udvari*, 705 A.2d at 1293. "In the absence of objective medical testimony, the WCJ is neither required to accept the claimant's assertions, nor prohibited from doing so." *Id.*

Here, in the face of Claimant's subjective complaints of ongoing pain, the Employer presented the testimony of Dr. Gordon who unequivocally stated that, to a reasonable degree of medical certainty, based on his review of Claimant's medical history and his physical examination of Claimant, Claimant had fully recovered from his work injury and needed no further treatment. (R.R. at 101a-02a.) Further, while Dr. Gordon did not use the "magic words," that there were no objective medical findings to substantiate Claimant's claims of pain or connect them to the work injury, Dr. Gordon's testimony fully supports such a conclusion. *Udvari*, 705 A.2d at 1293 n.3 (noting that the failure to use the "magic words is not fatal to the employer's claim"). Dr. Gordon testified that in the course of his physical examination of Claimant, Dr. Gordon found that Claimant's hip was "very stable," Claimant had "no numbness or tingling or any neurologic complication," the soft tissue around the hip was normal, "the hip was comfortable in several motions," the hip abductors "were strong," and Claimant had "a normal gait." (R.R. at 99a-100a.) Thus, Dr. Gordon stated, none of the testing he performed on Claimant supported Claimant's subjective complaints of pain. (*Id.* at 100a); *see Udvari*, 705 A.2d at 1293 (noting that the employer can meet its burden of proof on a termination petition by showing

that there are no objective medical findings to substantiate the subjective complaints of pain).

While Claimant testified that he continued to experience pain in his hip, and the WCJ could have "give[n] more credence to . . . [C]laimant's testimony regarding incapacitating pain than to [Dr. Gordon's] testimony" and denied the Termination Petition on that basis, *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 507 (Pa. Cmwlth. 1998), the WCJ specifically rejected Claimant's testimony as "not credible as to his alleged ongoing pain in the hip area." (FOF ¶ 9.) The WCJ did so because Claimant had not sought any medical treatment for the alleged pain in his hip for about a year, according to his own testimony,[3] and Claimant had told Dr. Nelson in January 2015 that the pain in his hip was only a 3 out of 10, both of which are findings supported by the evidence of record. Since there was no objective medical evidence substantiating Claimant's subjective complaints of pain, from either Dr. Gordon or Dr. Fink, it was a question of fact for the WCJ to resolve whether Claimant's subjective complaints of pain were believable, and the WCJ resolved that question against Claimant. In other words, the WCJ rejected Claimant's subjective complaints of pain in his right hip. The WCJ's rejection of Claimant's subjective complaints of pain in his right hip is a credibility determination that we may not disturb on appeal. *Udvari*, 705 A.2d at 1293.

In any case, even if the WCJ had credited Claimant's subjective complaints of pain in his hip, the WCJ concluded that such complaints were not causally related

---

[3] Employer suggested to Claimant that, based on the medical records Employer reviewed, Claimant did not receive any medical treatment for his right hip for nearly two years, from January 2015 until December 2016. (R.R. at 18a, 29a, 53a, 88a.) Claimant, however, was unable to confirm whether he had a two-year hiatus between treatments and could only "guess" this was correct. (*Id.* at 18a.)

to Claimant's work accident. Dr. Gordon did recognize that Claimant complained of pain in his right hip, and, when asked on cross examination, answered that he would attribute these complaints to Claimant's weight gain. However, Dr. Gordon testified that Claimant's weight gain was unrelated to Claimant's work injury and resulting hip surgery since the surgery was "well-done," (R.R. at 105a), Claimant had little follow up after the surgery because he "was doing quite well," (*id.* at 98a), and weight gain following surgery was atypical because "[o]nce the hip [was] fixed, [the patient was] ready to rock and roll," (*id.* at 115a). In other words, any claimed pain in Claimant's right hip, Dr. Gordon concluded, was unrelated to his work injury because the weight gain was attributable to some reason other than the surgery, (*id.* at 116a), whether it be depression or some other reason.

Contrary to Claimant's contention, Employer did not have to present proof of what was the cause of Claimant's subjective complaints of pain. *See Saville v. Workers' Comp. Appeal Bd. (Pathmark Stores, Inc.)*, 756 A.2d 1214, 1219 (Pa. Cmwlth. 2000) (stating that the employer meets its burden on a termination petition when it "show[s] a lack of a causal connection between any currently existing disability and the work-related injury"); *see also Szczepanski v. Workers' Comp. Appeal Bd. (Leggett & Platt)* (Pa. Cmwlth., No. 1909 C.D. 2011, filed May 10, 2012), slip op. at 9-12 (rejecting the claimant's argument that the employer had the burden of explaining the reasons why the claimant continued to suffer pain, and cited *Udvari* in support).[4] To meet its burden of proof, Employer had to show that there were no objective medical findings to connect Claimant's subjective complaints of pain with the work injury. *Udvari*, 705 A.2d at 1294 (recounting that the employer's medical expert suggested that the cause of the claimant's continued complaints of

---

[4] *Szczepanski* is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

14

pain was that she was embellishing her symptoms). Employer did this through Dr. Gordon's credited testimony.

Therefore, because the WCJ credited Dr. Gordon's testimony, which was sufficient to meet Employer's burden of proof under *Udvari*, and the WCJ discredited Claimant's subjective complaints of pain, "the termination of benefits [was] proper." *Id.* at 1293.

## III. Conclusion

For the foregoing reasons, the Board properly affirmed the WCJ's Decision granting the Termination Petition, and we thus affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Leaper,                                        :
                 Petitioner          :
                                    :
            v.                 :    No. 1156 C.D. 2018
                                    :
Workers' Compensation Appeal                         :
Board (St. Mary Medical Center),                     :
                 Respondent          :

## **O R D E R**

**NOW**, April 5, 2019, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

 

                          _____

                          **RENÉE COHN JUBELIRER,** Judge